IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BEN FLOYD, *et al.*,           §
      Plaintiffs,           §
                    §
v.           §        CIVIL ACTION NO. H-08-3048
                    §
CIBC WORLD MARKETS, INC.,           §
*et al.*,           §
      Defendants.           §

**<u>MEMORANDUM AND ORDER</u>**

Pending before the Court is a Motion to Dismiss [Doc. # 6] ("Motion"), filed

by Defendants CIBC World Markets, Inc. and CIBC World Markets Corp.

(collectively, "CIBC").[1]  Plaintiff Ben Floyd ("Floyd"), on behalf of the Estate of

Seven Seas Petroleum, Inc. ("Seven Seas") has responded [Doc. # 19].[2]  CIBC has

replied [Doc. # 23].[3]  Upon review of the parties' submissions, all pertinent matters

---

[1]     Four days after filing the Motion, CIBC filed a Motion to Supplement Motion to Dismiss [Doc. # 16] ("Motion to Supplement").  Plaintiff responded [Doc. # 20] ("Plaintiff's Response to Motion to Supplement"), CIBC replied [Doc. # 24] ("CIBC's Reply to Motion to Supplement"), and Plaintiff filed a surreply [Doc. # 25] ("Plaintiff's Surreply").

[2]     The caption to Plaintiff's Amended Complaint indicates that there are two plaintiffs: Ben Floyd and Seven Seas.  However, as clarified at the initial pretrial conference held on February 9, 2009, Plaintiff's Amended Complaint asserts claims by only one plaintiff, Ben Floyd.  Accordingly, throughout this Memorandum and Order, the Court refers to Plaintiff in the singular.  *See also infra* Section II.B.

[3]     CIBC has additionally filed a Supplemental Brief in Support of Motion to Dismiss
(continued...)

of record, and applicable legal authorities, the Court concludes that CIBC's Motion

should be **granted in part** and **denied in part**.

## I.      FACTUAL BACKGROUND

Seven Seas was an oil and gas exploration company with operations focused

in the Guaduas Fields (the "Fields") in Columbia, South America.  Seven Seas lost

money on these operations between 1995 and 2000.  Plaintiff's Amended Complaint

alleges that by early to mid 2001, Seven Seas was insolvent from both a liquidity and

balance sheet perspective and that it was evident to the Directors of Seven Seas and

other company insiders that, absent additional funding, Seven Seas would have to file

bankruptcy by late 2001.  Seven Seas accordingly sought to raise additional funds in

an effort to continue operations.  Plaintiff alleges that Seven Seas hired CIBC[4] to serve

as Seven Seas' exclusive financial advisor, to assist in raising these additional funds,

and to render a fairness opinion in connection with any potential financing transaction.

Ultimately, Seven Seas reached an agreement with Chesapeake Energy Corporation

("Chesapeake") to issue $45 million senior, secured notes (the "Secured Facility"),

$22.5 million of which would be purchased by Chesapeake and $22.5 million of

---

[3]      (...continued)
[Doc. # 26] ("Supplemental Brief") to which Plaintiff has responded [Doc. # 27]
(Plaintiff's Response to Supplemental Brief").

[4]      Plaintiff does not distinguish in its allegations between the two named CIBC entities.
*See infra* Section II.A.2.

which would be purchased by a group of Seven Seas' insiders.[5] These senior, secured notes were to be secured by substantially all of Seven Seas' assets.  In addition, the senior, secured notes included detachable warrants which, if exercised, gave the purchasers (Chesapeake and the insiders) the right to purchase up to forty percent of Seven Seas' common stock at a price below Seven Seas' trading price at the time of the transaction.  At a May 17, 2001, meeting, having received a preliminary opinion from CIBC that the Secured Facility was fair from a financial point of view, the Seven Seas' board of directors authorized Seven Seas to issue the senior, secured notes.  On July 23, 2001, CIBC issued a final written fairness opinion regarding the transaction. The Secured Facility closed the following day.

Seven Seas used the $45 million to develop its proven reserves in the shallow portions of the Fields and to drill the Escuela 2 well in the deep Fields.  These exploration and development efforts proved unsuccessful.  Seven Seas' reserve engineering firm subsequently reduced Seven Seas' reserve estimates by sixty-six percent.  The combination of poor financial performance and the reserve write-down pushed Seven Seas to announce in November 2002 that it would likely cease operation in late 2002 or early 2003.  Seven Seas began implementing a wind-down strategy at

---

[5]     The group of insiders included four of the seven directors on Seven Seas' board of directors.

Chesapeake's request, which included a plan to sell Seven Seas' rights to the shallow Fields.  In connection with this process, CIBC was retained to market Seven Seas' interest in the Fields and to administer the auction process.

On December 20, 2002, a group of senior noteholders filed an involuntary Chapter 7 bankruptcy petition against Seven Seas.  Seven Seas subsequently filed its own petition under Chapter 11 and Plaintiff Ben Floyd was appointed as Chapter 11 Trustee on January 14, 2003.  In his capacity as Trustee, Floyd filed suit against Chesapeake, the directors of Seven Seas, and CIBC (the "Director Litigation").[6] Floyd sued the directors for breach of their fiduciary duties in connection with the Secured Facility transaction.  As to CIBC, the Trustee alleged that CIBC was negligent and breached its duty of care to Seven Seas and that CIBC aided and abetted the Directors' breach of fiduciary duties.  On September 18, 2003, Floyd dismissed CIBC from the Director Litigation without prejudice.  Floyd subsequently settled with the remaining defendants in the Director Litigation.

On August 4, 2003, the United States Bankruptcy Court for the Southern District of Texas confirmed the Chapter 11 Trustee's Second Amended Plan of Reorganization for Seven Seas.  On October 14, 2008, Plaintiff filed a complaint in the present action asserting seven claims against CIBC: aiding and abetting the breach

---

[6]    *See Floyd v. Hefner*, 556 F. Supp. 2d 617 (S.D. Tex. 2008) (Harmon, J.).

of fiduciary duty by Seven Seas' directors; breach of CIBC's fiduciary duties of care and of loyalty to Seven Seas; negligence; gross negligence; fraud; and negligent misrepresentation.  CIBC moves to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

## II.    ANALYSIS

### A.    Claims Against CIBC World Markets, Inc.

CIBC argues that Plaintiff's Amended Complaint "contains no individualized claims against defendant CIBC World Markets, Inc. [("CWM, Inc.")]," that "all of [Plaintiff's] claims of liability related to the Fairness Opinion issued by CIBC World Markets Corp. [("CWM Corp.")]," and that Plaintiff does not and cannot "allege that [CWM, Inc.] participated in any way in the creation of the Fairness Opinion, or that otherwise it should be liable for the actions of [CWM Corp.]."[7]  The Court analyzes this motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### 1.    Rule 12(b)(6) Legal Standard

Traditionally, courts hold that a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim is viewed with disfavor and is rarely granted.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.

---

[7]    *Id.* at 8–9.

2009); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). The Supreme Court has explained that in considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted))).    Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 120 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  Legal conclusions "are not entitled to the assumption of truth."  *Id.* at 1950.  Legal conclusions "can provide the framework of a complaint," but they must be supported by factual allegations.  *Id.*[8]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.  "A claim has facial

---

[8]      "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 120 S. Ct. at 1949

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  The determination of "whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).[9]  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).  It is insufficient to plead facts that are "merely consistent with" a defendant's liability.  *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a court ordinarily must limit itself to the contents of the pleadings and attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  "Documents that a defendant attaches to a motion to dismiss are [also] considered part

---

[9]        "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).

of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499. These are documents presumably whose authenticity no party questions.

### 2.    Rule 12(b)(6) Analysis: Allegations Against CWM, Inc.

Plaintiff argues that its Amended Complaint makes sufficient factual allegations against CWM, Inc. to state a claim upon which relief may be granted. Specifically, Plaintiff argues that its Amended Complaint alleges "significant and severe wrongdoing against [CWM, Inc.]" because CWM Corp. and CWM, Inc. "were referred to collectively" and "[e]very allegation made against [CWM] Corp. was made against [CWM], Inc. and *vice versa*."[10] Merely alleging joint wrongdoing without factual content is insufficient to withstand CIBC's Rule 12(b)(6) challenge. As explained below, there are no factual allegations in Plaintiff's Amended Complaint about conduct by CWM, Inc. specifically, and thus no facts pleaded to permit the Court to do more than speculate about the mere possibility of misconduct by CWM,

---

[10]    Plaintiff's Response [Doc. # 19], at 8.

Inc.  *See Iqbal*, 129 S. Ct. at 1950.  As pleaded, the Court cannot draw a reasonable inference that CWM, Inc. is liable for the misconduct alleged.

The facts alleged in Plaintiff's Amended Complaint plainly relate to the engagement of CWM Corp. to provide financial services to Plaintiff.  Plaintiff's Amended Complaint makes no specific allegations of wrongdoing by CWM, Inc.  Plaintiff's Amended Complaint specifically alleges that "CIBC['s] duties were detailed in its engagement letter with [Seven Seas]" and that CIBC breached these duties.[11]  Because the engagement letter is central to Plaintiff's claim and its contents are undisputed, the Court may properly consider the terms of the engagement letter, attached as Exhibit 1 to CIBC's Motion to Dismiss [Doc. # 13].  *See Collins*, 224 F.3d at 498.  The engagement letter is executed between CWM Corp. and Seven Seas.  The engagement letter makes no reference to CWM, Inc.  The same holds for CIBC's written fairness opinion.  As evidenced by Exhibit 2 to CIBC's Motion to Dismiss [Doc. # 13], the fairness opinion was issued solely by CWM Corp. and makes no reference to CWM, Inc.  Plaintiff cannot avoid the clear and unequivocal import of these documents that relevant misconduct, if any, was committed by CWM Corp.  Simply pleading that the alleged misconduct was collective in nature, without identifying specific conduct by CWM, Inc. is insufficient to meet Plaintiff's pleading

---

[11]      Plaintiff's Amended Complaint [Doc. # 5], at 5 n.4.

burden.  Plaintiff's Amended Complaint accordingly has not stated a plausible claim for relief against CWM, Inc.  CIBC's Motion is granted with respect to claims against CWM, Inc.  The Court nevertheless will grant Plaintiff leave to amend if it is able to do so within the strictures of Rule 11.[12]

### B.    Plaintiff's Standing as a Real Party-in-Interest

CIBC next argues that the reorganized Seven Seas is not a party to this case and that Floyd, as the sole executive officer of Seven Seas, lacks standing to bring claims on behalf of Seven Seas in his own name.  As discussed more fully in the following section of this Memorandum, a case is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction when a party does not have standing to bring a claim.  Under Federal Rule of Civil Procedure 17(a), an action must be prosecuted in the name of the real party in interest.  FED. R. CIV. P. 17(a)(1); *Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 573 (5th Cir. 2006).

CIBC's argument ignores the Seven Seas confirmed reorganization plan that provides explicitly that "the Reorganized Debtor may bring suit or defend actions on behalf of, and in the name of, the Chapter 11 Trustee as well as itself."[13]  CIBC's

---

[12]    Accordingly, the Court does not reach CIBC's argument that the Court lacks specific or general personal jurisdiction over CIBC World Markets, Inc., which CIBC raised in its Motion to Supplement [Doc. # 16].

[13]    Order Confirming Chapter 11 Trustee's Second Amended Plan of Reorganization for Seven Seas Petroleum, Inc., Exh. 6 to CIBC's Motion [Doc. # 13], § 12.2 (emphasis

argument fails to account for this clear language in the confirmed reorganization plan that permits Seven Seas to sue in the name of Trustee Floyd.

Alternatively, CIBC argues, citing *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 308 (5th Cir. 2001), that Floyd is not entitled to "amend" the complaint to name the real party-in-interest because the applicable provisions of Rule 17(a)(3) govern only when a plaintiff sues in the wrong name as a result of an understandable mistake. The Court is unpersuaded of CIBC's application of these principles here. *Wieburg* clarifies that the purpose of Rule 17(a) is to prevent unjust forfeiture. Moreover, the provision of the confirmed reorganization plan purporting to permit Seven Seas to sue in the name of the Trustee makes Plaintiff's mistake, if any, reasonable. Accordingly, Plaintiff is granted leave to file an amended complaint under Rule 17(a)(3) naming Seven Seas, the reorganized debtor, as the real plaintiff party in interest.[14] Accordingly, CIBC's motion to dismiss on the basis of Rule 12(b)(1) and Rule 17(a) is denied.

_____

added) ("Order of Confirmation").

[14]   This ruling is consistent with the Court's comments during the initial pretrial conference on February 9, 2009, when the Court discussed with the parties the issue of who is the appropriate party-in-interest to assert the claims in the Amended Complaint. *See* Transcript of Initial Pretrial Conference, [Doc. # 21], at 16. The parties have been aware of the issue for a substantial period of time, if not from the case's inception, and it is still early in the case. There is no surprise to CIBC. The Court clearly informed the parties that it would permit Plaintiff to file an amended complaint naming Seven Seas the real party in interest, if appropriate.

### C. Plaintiff's Standing to Assert Claims on Behalf of Seven Seas' Bankruptcy Estate, Shareholders, or Creditors

CIBC argues that Plaintiff lacks standing to assert claims against CIBC on behalf of Seven Seas' creditors because those claims are personal to the creditors and were not the property of the bankruptcy estate. CIBC additionally argues that Plaintiff has failed "to allege how Seven Seas was harmed by incurring more debt when the company was already supposedly insolvent."[15]  Plaintiff responds that its Amended Complaint asserts claims on behalf of the Seven Seas' bankruptcy estate for pre-bankruptcy injuries to Seven Seas and that Plaintiff is not attempting to assert claims personal to any specific creditors. In this vein, Plaintiff asserts claims against CIBC for aiding and abetting the breach of fiduciary duty by Seven Seas' directors, for breach of CIBC's own fiduciary duties to Seven Seas, negligence, gross negligence, fraud, and negligent misrepresentation.

A case is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted). A party seeking to invoke federal court jurisdiction must present an actual case or controversy. *See* U.S. CONST. Art. 3 § 2; *Flast v. Cohen*, 392 U.S. 83, 95

---

[15]     CIBC's Motion [Doc. # 13], at 10.

(1968).   Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III," and is not subject to waiver.   *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997); *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   Plaintiff has the burden of establishing that it has standing to bring claims.   *See Lujan*, 504 U.S. at 560–61; *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009).   A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction.   *Id.*   The Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff."   *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2007).

The bankruptcy estate is comprised, *inter alia*, of "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. § 541(a)(1).   Plaintiff asserts claims on behalf of the bankruptcy estate as successor in interest for the alleged injuries caused by CIBC to Seven Seas before it filed for bankruptcy.   Prior to confirmation of the reorganization plan, Floyd, as the bankruptcy trustee, had exclusive standing to assert claims belonging to the bankruptcy estate.   *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) (citing *In re Educators Group*

*Health Trust*, 25 F.3d. 1281, 1284 (5th Cir. 1994)).[16]  A bankruptcy trustee, however, has no right to bring claims that belong solely to the estate's creditors.  *Id.* (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)).  Pursuant to the confirmed reorganization plan, the reorganized debtor, Seven Seas, has the power of the Trustee to prosecute "all claims and causes of action that the Chapter 11 Trustee could have asserted."[17]

Procedurally, "[w]hether a specific cause of action belongs to a bankruptcy estate is . . . a matter of law that [the Court] decides by reference to the facial allegations in the complaint."  *In re Seven Seas*, 522 F.3d at 583.  On the merits, whether a particular claim belongs to the bankruptcy estate depends on whether under applicable law the debtor could have raised the claim prior to the commencement of the case.  *Id.*; *see also Educators Group Health Trust*, 25 F.3d. at 1284 (citing *In re S.I. Acquisition*, *Inc.*, 817 F.2d 1142, 1142 (5th Cir. 1987)).  If a cause of action does not explicitly or implicitly allege harm to the debtor, the cause of action could not have been asserted by the debtor as of the commencement of the case.  *In re Seven*

---

[16]   In *In re Seven Seas*, bondholders of Seven Seas' unsecured notes brought an action against Chesapeake, a secured creditor of Seven Seas, asserting claims for conspiracy to defraud and aiding and abetting fraud.  On appeal, the Fifth Circuit held that the claims asserted by the bondholders were not the property of Seven Seas' bankruptcy estate because the claims could not have been brought by Seven Seas at the commencement of the bankruptcy proceeding.

[17]   Order of Confirmation, Exh. 6 to CIBC's Motion [Doc. # 13], § 12.2.

*Seas*, 522 F.3d at 583; *In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir. 1999) ("A trustee can assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal.").  However, "[i]f a cause of action alleges only indirect harm to a creditor (*i.e.*, an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Educators Group Health Trust*, 25 F.3d. at 1284.

CIBC argues that Plaintiff's Amended Complaint "purports to allege damages to various entities or persons including the 'unsecured creditors' or 'the Company, its *shareholders*, and its *creditors*.'"[18]  CIBC argues that these allegations make clear that there was no underlying injury to Seven Seas and that the injuries alleged were suffered by the company's unsecured creditors when their claims were subordinated to the secured creditors.  The Court is not persuaded by CIBC's interpretation of the claims alleged in Plaintiff's Amended Complaint.  Plaintiff's Amended Complaint alleges that CIBC's actions injured Seven Seas itself prior to its filing bankruptcy.  Specifically, Plaintiff asserts claims against CIBC for aiding and abetting Seven Seas' Directors' breach of fiduciary duties, and breaching its own fiduciary duties to Seven Seas, as well as committing negligence, gross negligence, fraud, and negligent

---

[18]    CIBC's Motion [Doc. # 13], at 9 (emphasis in original).

misrepresentation to the corporation.  Plaintiff's Amended Complaint alleges that these claims resulted in pre-petition injury to Seven Seas and, therefore, the claims belong to the bankruptcy estate.  Plaintiff alleges it suffered over $100 million dollars in damages from CIBC's actions.  While it is unclear from Plaintiff's Amended Complaint how this damage figure is calculated, it is clear that Seven Seas paid fees to CIBC and that as a result of the Secured Facility—which CIBC's fairness opinion deemed fair from a financial point of view—Seven Seas was forced to sell its assets under circumstances and timing different from when it otherwise would have and was precluded from adopting different strategies in an attempt to raise additional funding. While the alleged injury to Seven Seas may have concomitantly resulted in damage to the individual creditors, this circumstance in an of itself does not render the claims personal to certain creditors in the sense described by the Fifth Circuit in *In re Seven Seas*, 522 F.3d 575.[19]

CIBC directs the Court to *In re Seven Seas*, 522 F.3d at 587, and *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 212 S.W.3d 522, 532–33 (Tex.App.—Houston [1st Dist.] 2006, pet. denied), in support of its argument that Plaintiff lacks standing to assert claims based on alleged damages to these creditors.  However, these cases

---

[19]     It is also immaterial, from a Rule 12(b)(1) and subject matter jurisdiction standpoint, that the claim may not result in any, let alone significant, damages.  Such a deficiency must be addressed in due course on the merits.

are materially factually distinguishable from the case at bar because both cases addressed claims held by unsecured claimants *against third parties*. The pre-petition debtor was never in a position to assert those claims and, therefore, these claims could not have been part of the bankruptcy estate. In contrast, at bar, Plaintiff asserts specific pre-petition injury to the debtor Seven Seas caused by CIBC's alleged breach of fiduciary duties, negligence, and fraud. These claims each could have been asserted by Seven Seas as of the commencement of the bankruptcy petition and, therefore, fit within the scope of the bankruptcy estate. Plaintiff therefore has standing to assert these claims, and the Court denies CIBC's motion to dismiss on this basis.[20]

---

[20] With respect to CIBC's argument that Plaintiff cannot demonstrate injury to Seven Seas because it was already insolvent at the point at which the alleged injury took place, the Court disagrees. As aptly stated by the Honorable Melinda Harmon in a related case, this argument fails to consider that the alleged injury

> ultimately cost Seven Seas its very existence, which is affirmative harm to all of Seven Seas' constituencies, including the shareholders. The Court notes that to hold otherwise would essentially permit a director to pursue any course of action without scrutiny if the corporation is in dire financial straits. Such a result would be untenable.

*Floyd*, 556 F. Supp. 2d at 654.

**D.    Plaintiff's Standing to Assert Claims Based on the Express Reservation of the Claims**

In a similar vein, CIBC[21] argues that the Fifth Circuit's decision in *In re United Operating, LLC*, 540 F.3d 351 (5th Cir. 2008), bars Plaintiff's right to pursue claims against CIBC.  The Court disagrees.  In *United Operating*, the Fifth Circuit held that Dynasty Oil and Gas ("Dynasty"), a reorganized debtor, did not have standing to pursue common law claims arising from defendants' pre-confirmation management of the bankruptcy estate's assets because the plan of reorganization did not expressly reserve Dynasty's right to pursue common law claims.[22]  The Fifth Circuit held that "[a]fter confirmation of a plan, the ability of the debtor to enforce a claim once held by the estate is limited to that which has been retained in the plan."  *Id.* at 355 (quoting *In re Paramount Plastics, Inc.*, 172 B.R. 331, 333 (Bankr. W.D. Wash.

---

[21]    The *United Operating* decision was issued nearly six months before CIBC filed its Motion to Dismiss.  CIBC nevertheless first raised this argument in its Supplemental Brief [Doc. # 26], which it filed after CIBC's Motion to Dismiss was fully briefed.

[22]    By way of background information, Dynasty owned several oil and gas properties that were not in production at the time Dynasty it filed its Chapter 11 petition.  Citizens Bank, Dynasty's largest creditor, moved the court to appoint an operator to bring these properties back into production.  The bankruptcy court appointed Wildcat Energy to operate the properties until the confirmation of the Chapter 11 plan.  Under the plan, Dynasty's operating assets were liquidated through sale to Saber Resources.  Dynasty, however, was to survive as a corporation with limited powers to pursue some claims on behalf of the estate.  After confirmation of the plan, Dynasty filed a state court action against Citizens Bank and Wildcat, alleging common law claims including fraud, breach of fiduciary duty, and negligence arising out of the defendants' pre-confirmation management of the bankruptcy estate's assets.

1994), citing *In re Tex. Gen. Petrol. Corp.*, 52 F.3d 1330, 1335 n.4 (5th Cir. 1995)).

To preserve a claim, the plan must "expressly retain the right to pursue such actions"

and the reservation must be "specific and unequivocal." *Id.* (citations omitted); *see*

*also In re Nat'l Benevolent Ass'n of the Christian Church*, 2009 WL 1649485, at *4

(5th Cir. June 11, 2009) (unpublished).

CIBC argues that Plaintiff's reorganization plan failed to expressly retain the

right to pursue actions against CIBC and, therefore, that Plaintiff does not have

standing to assert these claims.  CIBC adds that "Floyd failed to identify any specific

claims it might later bring against CIBC in his Disclosure or Plan" and, therefore, he

cannot meet the express retention requirement of *United Operating*.[23]  Plaintiff

responds that it is not required to expressly reserve specific causes of action against

specific defendants and that such a requirement would frustrate the policy behind the

Bankruptcy Code.  Plaintiff argues that *United Operating* merely requires the

reorganized debtor to "receive a general assignment of all a debtor's litigation claims

or an assignment of litigation claims by type (*i.e.*, common law claims based on state

law, preferences actions or other statutory claims arising under the Bankruptcy Code)

---

[23]     CIBC's Supplemental Brief [Doc. # 23], at 9.

in the debtor's Chapter 11 plan."[24]  Additionally, Plaintiff argues that it expressly retained specific claims against CIBC in its reorganization plan.

The Court has fully examined the Second Amended Plan of Reorganization for Seven Seas Petroleum, Inc. ("Reorganization Plan")[25] and the Second Amended Disclosure Statement under 11 U.S.C. § 1125 in Support of Trustee's First Amended Plan of Reorganization ("Disclosure Statement").[26]  Courts are to consider the disclosure statement as well as the terms of a plan of reorganization.  *See In re Kelley*, 199 B.R. 698, 704 (B.A.P. 9th Cir. 1996) ("if the debtor fails to mention the cause of action in either his schedules, *disclosure statement*, or plan, then he will be precluded from asserting it postconfirmation") (emphasis added); *IBM Southeast Employees Federal Credit Union v. Collins*, 2008 WL 4279554, at *10 (M.D. Tenn. Sept. 17, 2008); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 487 F. Supp. 2d 914, 928 (S.D. Ohio 2007); *In re Felt Mfg. Co., Inc.*, 402 B.R. 502, 518 (Bankr. D.N.H. 2009).  This Court and concludes that the Reorganization Plan as elucidated by the Disclosure

---

[24]     Plaintiff's Response to Supplemental Brief [Doc. # 27], at 15.

[25]     Chapter 11 Trustee's Second Amended Plan of Reorganization for Seven Seas Petroleum, Inc., Exh. 4A to CIBC's Supplemental Brief [Doc. # 26].

[26]     Second Amended Disclosure Statement under 11 U.S.C. § 1125 in Support of Trustee's First Amended Plan of Reorganization, Exh. 3 to CIBC's Supplemental Brief [Doc. # 26].

Statement specifically and unequivocally reserved the claims Plaintiff seeks to assert against CIBC.

The Reorganization Plan provided that the "Reorganized Debtor shall have all the power of the Trustee to prosecute claims, including the power to prosecute all claims and causes of action that the Chapter 11 Trustee could have asserted."[27]  The Disclosure Statement provides that "[o]n the Effective Date of the Plan . . . all property of the Debtor and of the Estate *including all rights to bring Litigation Claims*, shall vest in the Reorganized Debtor."[28]  "Litigation Claims" are defined as "all claims or causes of action held by the Debtor and its Subsidiaries, including any Avoidance Actions."[29]  Significantly the Disclosure Statement further and more specifically provides that:

> All rights of the Debtor to pursue recovery of Litigation Claims (including claims under Chapter 5 of the Bankruptcy Code), as well as all other claims belonging to the Estate, including but not limited to claims for breach of fiduciary duty, alter ego, single business enterprise, self-dealing, usurpation of corporate opportunity, denuding, and similar claims under *In re: S.I. Acquisition*, 817 F.2d 1142 (5th Cir. 1987)[,] and related authorities will be transferred to the Reorganized Debtor for the purpose of recovery for the benefit of the creditors of the Estate.  A

---

[27]     Reorganization Plan [Doc. # 26, Exh. 4A], § 12.2.

[28]     Disclosure Statement [Doc. # 26, Exh. 3], § IV.C.1 (emphasis added).

[29]     Reorganization Plan [Doc. # 26, Exh. 4A], at 6.

summary of the types of Avoidance Actions and the potential claims to
be asserted by the Reorganized Debtor are described below.[30]

Subsequently in a section that appears shortly thereafter and is titled "*S.I. Acquisition
Claims and Other Potential Claims*," the Disclosure Statement expressly provides that:

> Prior to the Petition Date, CIBC was retained by the Debtor to assist it
> in obtaining financing to develop the Guaduas fields and to provide it
> with certain other financial advice and professional service.  The Trustee
> is currently investigating and may bring certain causes of action against
> CIBC, its affiliated entities, and/or subsidiary corporations.[31]

Under *United Operating*, the blanket reservation in the Reorganization Plan in
itself, is insufficient to constitute a specific and unequivocal reservation of claims.
*See United Operating*, 540 F.3d at 356.  However, the Disclosure Statement is a
supplement to the plan and, in combination, they accomplish the reservation of claims
Plaintiff seeks to assert against CIBC.  Indeed, the Disclosure Statement reserved
breach of fiduciary duty claims and "*S.I. Acquisition* type claims,"[32] and specifically
stated that it was considering bringing claims against CIBC after plan confirmation.
*See United Operating*, 540 F.3d at 355 (citing [*In re*] *Ice Cream* [*Liquidation, Inc.*],
319 B.R. [324,] 337–38 [(Bankr. D. Conn. 2005)] (holding that the categorical
reservation of 'preference' claims in a reorganization plan was sufficiently specific;

---

[30]   Disclosure Statement [Doc. # 26, Exh. 3], § VII.D.1.

[31]   *Id.*, § VII.D.4.

[32]   *See S.I. Acquisition*, 817 F.2d at 1142.

the plan did not need to itemize individual transfers that may be pursued as preferential)). Plaintiff's Reorganization Plan and Disclosure Statement together satisfy the underlying purpose behind *United Operating*'s requirement, which is to ensure that creditors have sufficient information to make informed decisions in approving or disapproving the reorganization plan. *United Operating*, 540 F.3d at 355 ("Proper notice allows creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it—'absent "specific and unequivocal" retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote.'"). Here, Seven Seas' creditors and potential adversaries were given clear information about the claims that the reorganized Seven Seas was considering pursuing against CIBC. Those who voted to approve the Reorganization Plan made a knowing and intelligent decision.

Accordingly, the Court concludes that Plaintiff has standing to assert its claims against CIBC. CIBC's motion to dismiss on this basis is denied.

### E.    Choice of Law

CIBC argues that New York law governs Plaintiff's substantive claims because the engagement letter under which Seven Seas hired CIBC as its financial advisor contained a "broad" choice of law provision. Plaintiff argues that while the choice of

law provision may arguably require application of New York law to interpret the engagement letter, it does not require the application of New York law to Plaintiff's substantive claims, which sound in tort, not contract.

"In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).  Texas courts apply the Restatement (Second) of Conflict of Laws' ("Restatement") "most significant relationship" test to decide choice of law issues unless there is a valid choice of law clause.  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)).  "Texas law gives effect to choice of law clauses regarding construction of a contract." *Id.* (citing *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002)).  However, "[w]hen dealing with narrow choice of law provisions, Texas law requires an issue-by-issue choice of law analysis." *Id.* at 727 (citing *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999)).

The choice of law provision in the engagement letter provides in its entirety: "This letter agreement will be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be fully performed

therein."[33]  Considering the effect of an *identically* worded choice of law provision,[34] the Fifth Circuit held the provision is narrow and applies "only with the construction and interpretation of the contract."   *Benchmark Elecs.*, 343 F.3d at 726.   The *Benchmark* court further held that claims of fraud and negligent misrepresentation were not governed by this narrow choice of law provision.   *Id.*  Here, Plaintiff's claims are tort claims that do not appear to require construction or interpretation of the engagement letter.  Accordingly, based on the existing record, the New York choice of law provision in the engagement letter does not govern Plaintiff's claims.

CIBC argues that the choice of law provision in the engagement letter is far broader.  CIBC states that "the choice of law provision in the engagement letter here applies to 'any suit, action or other proceeding arising out of this letter agreement or the engagement of CIBC World Markets.'"[35]  CIBC erroneously relies on a clause pertaining solely to consent to personal jurisdiction, a provision distinct from the choice of law clause.  CIBC's selective quotation ignores the beginning of the quoted sentence; the language on which CIBC focuses refers solely to Seven Seas' consent

---

[33]  CIBC Engagement Letter, Exh. 1 to CIBC's Motion [Doc. # 13], at 5.

[34]  The choice of law clause in *Benchmark Elecs.* provided that the "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York."  *Benchmark Elecs.*, 343 F.3d at 726.

[35]  CIBC's Reply [Doc. # 23], at 10.

to personal jurisdiction in New York, *not* choice of law.  The sentence in its entirety reads as follows:

> [Seven Seas] irrevocably submits to the jurisdiction of any court of the State of New York located in the City and County of New York, or in the United States District Court for the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this letter agreement or the engagement of CIBC World Markets hereunder.

Plaintiff thus broadly consented to personal jurisdiction in New York, *i.e.*, to be sued in New York.  The engagement letter's choice of law provision, *i.e.*, what state's law will apply, however, is narrow; the choice of law provision expressly applies only to the construction and interpretation of the engagement letter and does not encompass all disputes between the parties relating to that letter or CIBC's engagement.

CIBC alternatively argues that Texas courts have applied contractual choice of law provisions to tort claims that arise out of a contractual relationship.  *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 11341 1142 (5th Cir. 1992).  The Fifth Circuit, however, expressly has held that in this respect *Tel-Phonic* "has been superseded by subsequent developments in Texas law and does not control." *Benchmark Elecs.*, 343 F.3d at 727.

Because the parties' contractual choice of law provision does not apply to Plaintiff's tort or non-contractual claims, the Court must perform a choice of law analysis under the Restatement's most significant relationship test.  Section 6 of the

Restatement provides seven general factors to be considered by the Court in making

choice of law determinations.[36] Further § 145(2) of the Restatement articulates four

additional factors to be considered in applying the general choice of law principles of

§ 6 to tort cases.[37] "Texas courts also apply the Restatement section specifically

addressed to the issue at hand." *Benchmark Elecs.*, 343 F.3d at 727 (citing *Hughes*

*Wood Prods*, 18 S.W.3d at 205). For Plaintiff's claims, this includes Restatement

§ 148, which specifically addresses fraud and misrepresentation.[38]

---

[36]    The relevant factors include "(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971).

[37]    The relevant § 145(2) factors include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971). These factors are to be evaluated according to their relative importance with respect to the particular issue. *Id.*

[38]    Section 148 provides that "[w]hen the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, (e) the place (continued...)

The Court lacks evidence at this stage of the proceedings to properly analyze all the Restatement factors.  While Plaintiff argues that the overwhelming majority of the facts related to Plaintiff's claims occurred in Texas—specifically alleging that the Seven Seas' employees who negotiated the Secured Facility were residents of Texas and that "the CIBC employees that purportedly worked on the Seven Seas engagement were residents of Texas"[39]—CIBC counters that CWM Corp. maintains its principal place of business in New York and that the fairness opinion was issued from CIBC's New York Office.  Because the facts of this case are complex, the Court cannot resolve these and other factual disputes concerning the various Restatement factors.  After appropriate time for discovery and presentation of evidence, the Court will apply these factors and make a choice of law determination.

## F.    *Wagoner* **Rule**

CIBC argues that the "*Wagoner* Rule" of *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991), deprives Plaintiff of standing to bring an action against CIBC.  The *Wagoner* Rule is a standing doctrine providing that under

---

[38]    (...continued)
where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2) (1971).

[39]    *Id.* at 6.

New York law a bankruptcy trustee cannot recover against a third party when a pre-petition debtor joined with a third party in defrauding its creditors. *See, e.g., In re CBI Holding Co.*, 529 F.3d 432, 447 (2d Cir. 2008) (quoting *Wagoner*, 944 F.2d at 120). Plaintiff counters that the Fifth Circuit has held that this type of defense is properly characterized as an equitable defense on the merits that does not deprive Plaintiff of standing to bring claims against CIBC. *See Educators Group Health Trust*, 25 F.3d. at 1286. As discussed above, because the Court is unable to make a choice of law determination at this stage of the proceedings, the Court does not reach the issue of whether the *Wagoner* Rule applies in this case or, if so, whether it bars Plaintiff's claims.

### G. *In Pari Delicto*

CIBC argues that Plaintiff's claims are barred by the doctrine of *in pari delicto*. As a threshold matter, Plaintiff points out that the Fifth Circuit has not applied the *in pari delicto* defense to claims made by a bankruptcy trustee. However, a majority of circuits have done so, *see In re Today's Destiny, Inc.*, 388 B.R. 737, 747–48 (Bankr. S.D. Tex. 2008) (Isgur, J.) (collecting cases), and the Court anticipates the Fifth Circuit would join this majority. The Court, therefore, considers the parties' arguments on the *in pari delicto* affirmative defense.

*In pari delicto* is an equitable affirmative defense that bars a corporate plaintiff from recovering from a defendant when the corporation's management participated in the alleged wrongdoing.  The *in pari delicto* doctrine "embodies the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct and is undergirded by the concerns, first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality."  *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985)).  Under the *Bateman Eichler* formulation of the *in pari delicto* doctrine, a plaintiff "cannot recover where, as a result of his own actions, the plaintiff bears at least *substantially equal responsibility* for the underlying wrongdoing of which he is complaining."  *Matter of Royale Airlines, Inc.*, 98 F.3d 852, 856 (5th Cir. 1996) (emphasis added); *see also Rogers*, 521 F.3d at 390 (citing *Bateman Eichler*, 472 U.S. at 310–11).

The Trustee is subject to all defenses available against the debtor.  *In re Sergerstrom*, 247 F.3d 218, 224 (5th Cir. 2001).  Here, Plaintiff stands in the shoes of the bankruptcy Trustee because of the assignment of the claims in the confirmed reorganization plan.  Where a complaint shows that relief is barred by an affirmative defense, it may be dismissed under Rule 12(b)(6) for failure to state a claim upon

which relief may be granted. *See Bank of New Orleans and Trust Co. v. Monco Agency, Inc.*, 823 F.2d 888, 891–92 (5th Cir. 1987); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("[A] complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action."). Here, however, whether Plaintiff is barred from recovering from CIBC on the basis of the *in pari delicto* doctrine requires a fact intensive determination of whether Seven Seas, the pre-petition corporation, bore at least substantially equal responsibility for the wrongdoing forming the basis of Plaintiff's claims. There are, *inter alia*, factual disputes about whether the alleged wrongdoing of some or all of the Directors is attributable to the corporation itself. The Court cannot conclude as a matter of law on the basis of allegations in the Amended Complaint that Plaintiff's claims are barred by the *in pari delicto* doctrine.

Furthermore, dismissal of Plaintiff's claims on this basis is premature because even in situations where the parties are found to be *in pari delicto*, under Texas law, "relief will sometimes be granted if public policy demands it." *Lewis v. Davis*, 199 S.W.2d 146, 151 (Tex. 1947). "[I]n reaching a decision as to granting or withholding relief, the question whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other."

*Id.* "The solution of the question depends upon the peculiar facts and the equities of the case, and the answer usually given is that which it is thought will better serve public policy." *Id.*  The policy analysis required by *Lewis* cannot appropriately be made prior to discovery.  *See, e.g.*, *In re Today's Destiny, Inc.*, 388 B.R. 737, 749 (Bankr. S.D. Tex. 2008).  At this stage of the proceedings, the Court is unable to rule as a matter of law that public policy would not demand that Plaintiff be afforded relief.  After appropriate time for discovery and presentation of evidence, the Court will assess whether Plaintiff's claims are barred on the basis of the *in pari delicto* defense as a matter of law, whether a trial on the issue is required, and/or whether equity and public policy demand that Plaintiff nevertheless be afforded relief.  Accordingly, CIBC's motion to dismiss on the basis of the *in pari delicto* doctrine is denied.[40]

---

[40]    Plaintiff argues that three exceptions to the *in pari delicto* defense apply to prevent application of this affirmative defense to Plaintiff's claims: the adverse interest exception, the corporate insider exception, and the innocent insider exception.  *See, e.g.*, *Silverman v. H.I.L. Assocs.*, 387 B.R. 365, 387 (Bankr. E.D.N.Y. 2008); *Floyd*, 556 F. Supp. 2d at 657–58; *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996); *Wilson v. Huffman*, 712 F.2d 206, 210 (5th Cir. 1983); *In re Adelphia Commc'ns Corp.*, 365 B.R. 24, 57 (Banrk. S.D.N.Y. 2007).  Determination of whether these exceptions govern here requires analysis of the same or similar facts the Court must examine in order to determine the threshold question of whether the *in pari delicto* defense applies in the first place.  The Court accordingly does not reach Plaintiff's arguments regarding the three exceptions.

## H.    Judicial Estoppel

CIBC argues that Plaintiff is judicially estopped from making claims and assertions inconsistent from those made in the Director Litigation.  Specifically, CIBC argues that Plaintiff is "estopped from asserting that CIBC had a duty to advise Seven Seas of alternative transactions or to warn that the [Secured Facility] would likely lead to liquidation."[41]  CIBC also argues Plaintiff is estopped from asserting that Seven Seas relied on CIBC's fairness opinion.[42]  CIBC asserts that Plaintiff took and prevailed on positions in the Director Litigation that prevent it from asserting positions required to establish a claim upon which relief may be granted.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding."  *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir. 2008) (quotation omitted); *see also Matter of Coastal Plains, Inc.*, 179 F.3d 197, 205–06 (5th Cir. 1999).  The purpose of judicial estoppel is to "protect the essential integrity of the judicial process by reducing the risk of inconsistent court determinations."  *Hopkins*, 545 F.3d at 347 (internal quotations omitted).  Courts generally identify two limitations on the application of judicial estoppel: (1) The

---

[41]    CIBC's Motion [Doc. # 13], at 16.

[42]    *Id.*

position of the party to be estopped must be clearly inconsistent with a prior position, and (2) the court must have accepted the prior position.  *Id.*; *see also Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000).  Judicial acceptance means that the prior court *actually accepted* the party's earlier position, either as a preliminary matter or as part of a final disposition.  *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004); *see also Hopkins*, 545 F.3d at 348 n.2; *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).[43]  Application of judicial estoppel rests in the Court's discretion.  *See Ahrens*, 205 F.3d at 833.

CIBC argues that in the Director Litigation, Plaintiff dismissed the claims against CIBC and then avoided summary judgment on the claims remaining against the directors by asserting that "CIBC had no duty to advise the directors of alternative transactions or warn [Seven Seas] that the secured financing would likely result in the

---

[43]  Citing dicta in *Hall v. GE Plastic Pacific PTE, Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003), CIBC argues that judicial estoppel may be applied whenever a party makes an argument with the explicit intent to induce a court's reliance, regardless of whether the court actually relied.  The Fifth Circuit has essentially disavowed the *Hall* dicta, recognizing the "potential inconsistency [between that approach and its] general approach and with the Supreme Court's analysis in *New Hampshire*."  *Hopkins*, 545 F.3d at 348 n.2.  The Court will apply the Fifth Circuit's general approach which requires actual reliance by a court.

distressed liquidation of its assets" and that "the directors did not rely on CIBC's advice or fairness opinion."[44]

Having examined the prior representations by the Trustee[45] and the prior court's opinion denying summary judgment against Plaintiff in the Director Litigation,[46] the Court finds that CIBC has not satisfied the second limitation on the application of judicial estoppel.  The prior court did not actually rely on either of the assertions that CIBC argues are inconsistent, CIBC's lack of a duty to advise the Directors of alternative transaction and the Directors' alleged lack of reliance on CIBC.  *See Floyd*, 556 F. Supp. 2d at 649.  The district court mentioned CIBC only in passing in its ruling denying summary judgment to the Directors and did so in a manner too vague to conclude there was any judicial adoption of Plaintiff's arguments to support judicial estoppel here.  The Court does not need to reach the issue of whether these positions are clearly inconsistent with Plaintiff's prior positions.[47]  Because the prior court did

---

[44]     CIBC's Motion [Doc. # 13], at 18.

[45]     *See* Plaintiff's Response to Director and Entity Defendants' Motion for Summary Judgment, Exh. 7 to CIBC's Motion [Doc. # 13].

[46]     *Floyd*, 556 F. Supp. 2d at 650–51.

[47]     The Court does note, however, that Plaintiff appears to have argued factual theories in the prior litigation against CIBC that are somewhat inconsistent with those Plaintiff asserts here.

not actually rely on either of the allegedly inconsistent positions, the Court denies CIBC's Motion on this basis.

**I.      Contractual Defenses**

CIBC argues that Plaintiff's negligence and negligent misrepresentation claims are barred by Seven Seas' contractual obligations under the "prospective release" aspect of the indemnification provision in the engagement letter.  CIBC also argues that Plaintiff's claims are barred by Seven Seas' contractual obligation in the engagement letter to release CIBC in connection with any settlement of litigation (the "settlement consent clause").  Plaintiff argues that both the prospective release and the settlement consent clauses are unenforceable under both New York and Texas law. As discussed in Section II.E above, New York law applies to the construction and interpretation of the engagement letter.  The Court concludes that under New York law, Plaintiff's negligence and negligent misrepresentation claims are barred.

**1.      Prospective Release Clause**

The engagement letter provides that

As CIBC World Markets will be acting on your behalf, [Seven Seas] agrees to indemnify CIBC World Markets and certain related parties in the manner set forth in Annex A which is attached and incorporated by reference in its entirety to this letter agreement.[48]

--------

[48]      Engagement Letter, Exh. 1 to CIBC's Motion [Doc. # 13], at 4.

Annex A provides that

> [Seven Seas] also agrees that no Indemnified Party [CIBC][49] will have
> any liability (whether direct or indirect, in contract, tort or otherwise) to
> the Company or any person asserting claims on behalf of the Company
> arising out of or in connection with any transactions contemplated by
> this letter agreement or the engagement of or performance of services by
> any Indemnified Party thereunder except to the extent that any Damages
> are found in a final non-appealable judgment by a court of competent
> jurisdiction to have resulted from the gross negligence or willful
> misconduct of the Indemnified Party.[50]

Under New York law, contractual clauses absolving a party prospectively from liability from its own ordinary negligence are generally enforceable. *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*, 611 N.E.2d 282, 283 (N.Y. 1993); *see also Bank v. Lake*, 726 N.Y.S.2d 291, 292 (N.Y. App. Div. 2001). However, the language of the exculpatory agreement must express in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's own negligence. *Lago v. Krollage*, 575 N.E.2d 107, 99–100 (N.Y. 1991); *see also Willard Van Dyke Prods., Inc. v. Eastman Kodak Co.*, 189 N.E.2d 693, 694 (N.Y. 1963) ("contracts will not be construed to absolve a party from, or indemnify him against, his own negligence, unless such intention is expressed in unequivocal terms.").

---

[49]   "Indemnified Party" is defined in the engagement letter as "CIBC World Markets, and its affiliates and their respective directors, officers, employees, agents and controlling persons." *Id.* at 7.

[50]   *Id.*

However, while "the actual word 'negligence' need not need not always appear in a liability waiver form to render the form effective, its presence is certainly significant." *Roane v. Greenwich Swim Committee*, 330 F. Supp. 2d 306, 321 (S.D.N.Y. 2004) (citing *Gross v. Sweet*, 400 N.E.2d 306, 309 (N.Y. 1979)).  If the contract does not use the term "negligence," other words of "similar import" must be used.  *Id.* (citing *Gross*, 400 N.E.2d at 309).

Plaintiff primarily argues that prospective releases are "highly disfavored" under New York law and that releases purporting to exempt a party from its own negligence must do so in clear, unambiguous, understandable terms.  Plaintiff argues the prospective release clause in the engagement letter does not satisfy the requirements of New York law.  Having examined the engagement letter in its entirety, the Court concludes as a matter of law that the prospective release is sufficient under New York law to bar Plaintiff's claims based on negligence.  The prospective release in the engagement letter constitutes the parties' expressed intent to exempt CIBC from any liability to Seven Seas for claims of ordinary negligence arising out of the services CIBC agreed to perform for Seven Seas.  *See Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 2002 WL 362794, at *15–*16 (S.D.N.Y. Mar. 6, 2002) (holding that under New York law,

a prospective release clause almost identical to the one at issue[51] was valid to avoid the defendant's liability arising out of its ordinary negligence).  The contract language excludes from the release claims of gross negligence and willful misconduct.

Plaintiff advances several additional arguments.  First, Plaintiff argues that the prospective release is "buried in an attachment to the main engagement letter and the print is considerably smaller than the print contained in the body of CIBC's engagement letter, making it unenforceable under New York law."[52]  Plaintiff directs the Court to *Gross v. Sweet*, 400 N.E.2d 306, 309 (N.Y. 1979), in support of its argument.  *Gross*, however, does not hold that small print renders a release unenforceable under New York law.  Rather, *Gross* holds that a release must be clear,

---

[51]    The clause in *Official Committee of Unsecured Creditors* provided that:

> The Company [SmarTalk] also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Person's actions or inactions in connection with such advice, service or transactions except for Liabilities (and related Expenses) of the Company that are determined by a judgment of a court of competent jurisdiction which is no longer subject to appeal or further review to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services.

*Official Comm. of Unsecured Creditors*, 2002 WL 362794, at *15.

[52]    Plaintiff's Response [Doc. # 19], at 37.

unambiguous, and understandable.  *Id.* at 309.  As discussed above, the prospective

release in CIBC's engagement letter's Annex A satisfies this requirement.

Second, Plaintiff argues that the prospective release does not justify dismissal

of Plaintiff's negligence and negligent misrepresentation claims because the "release

itself does not unequivocally and specifically state that CIBC is released for ***future***

acts of its own negligence asserted by [Seven Seas]."[53]  Plaintiff's argument regarding

future acts is misplaced.  The parties entered into the engagement letter prior to

CIBC's performance of its duties under that agreement.  The release stated it was to

cover "liability . . . arising out of or in connection with any transactions contemplated

by this letter agreement or the engagement of or performance of services by any

Indemnified Party thereunder."[54]  This language provided CIBC protection from

liability for future acts performed in connection with or pursuant to the engagement

letter.

Third, Plaintiff argues that the prospective release does not provide that it is

enforceable against Seven Seas' successors, the Seven Seas bankruptcy estate or

estate's creditors.  Plaintiff argues the right to indemnity is distinguishable from a

prospective release from liability, and Annex A provides only that the "indemnity,

---

[53]     *Id.* at 36–37 (emphasis in original).

[54]     Engagement Letter, Exh. 1 to CIBC's Motion [Doc. # 13], at 7.

reimbursement and contribution obligations of [Seven Seas] hereunder" will be binding on any successors of Seven Seas."[55]   Plaintiff contends that ambiguity in this clause must be construed against CIBC, the drafter of the agreement.   The Court is unpersuaded that this clause is ambiguous and disagrees with CIBC's interpretation. The engagement letter provides that Seven Seas agrees to "indemnify CIBC" "in the manner set forth in Annex A."[56]   Annex A is simply titled "Indemnification."   For the sake of analytical clarity and for purposes of this Memorandum and Order, the Court has referred separately to the "prospective release clause" (and the "settlement consent clause," *infra*) because they are different sentences within Annex A, a multi-faceted indemnity provision.   These clauses, however, do not stand on their own in the engagement letter.   The prospective release refines the scope of Seven Seas' indemnity obligations in Annex A.   Accordingly, the successor language in Annex A encompasses Seven Seas' "prospective release."

Finally, Plaintiff argues that the Court should exercise its equitable power and not enforce the prospective release because there is an "overwhelming amount of evidence demonstrating CIBC has unclean hands."[57]   Parties are presumed to know

---

[55]     *Id.*

[56]     *Id.* at 4.

[57]     Plaintiff's Response [Doc. # 19], at 38.

the legal effect of their contracts.  *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232–33 (Tex. 2008).  It is not inequitable to enforce the terms of an unambiguous contract. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement.").  Moreover, it is not clear that equity mandates the outcome Plaintiff suggests.  Plaintiff argued in the prior litigation legal positions against CIBC that appear at least somewhat, if not strongly contrary to those here.  Plaintiff also may have engaged in forum shopping when it dismissed without prejudice its claims against CIBC asserted in a viable legal forum.  The Court accordingly at this time declines to exercise any equitable discretion it may have to preserve Plaintiff's negligence and negligent misrepresentation claims.

In sum, the Court concludes that under New York law the prospective release is valid to immunize CIBC from liability arising out of its ordinary negligence.  Accordingly, Count IV (negligence) and Count VII (negligent misrepresentation) in Plaintiff's Amended Complaint are dismissed.

### 2.    Settlement Consent Clause

The settlement consent clause of the engagement letter's Annex A provides:

> [Seven Seas] agrees not to enter into any waiver, release or settlement of any Proceeding (whether or not CIBC World Markets or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior

written consent of CIBC World Markets (which consent will not be
unreasonably withheld), unless such waiver, release or settlement
includes an unconditional release of CIBC World Markets and each
Indemnified Party from all liability arising out of such Proceeding.[58]

CIBC argues that this clause precludes CIBC's liability on any of Plaintiff's
claims.  Plaintiff did not seek, and CIBC did not give, its express approval of the
settlement in the Director Litigation.  Nor did the settlement include an unconditional
release of CIBC from liability arising out of the proceedings.  CIBC argues that
because it did not approve the settlement agreement in the Director Litigation and
because that agreement did not release CIBC, CIBC now is entitled under the terms
of the settlement consent clause to the unconditional release from all liability on
Plaintiff's claims.

CIBC's interpretation of the settlement consent clause is not supported by the
language of the clause or any legal authority.  The clause provides CIBC with the right
to notice of and a right to object to a proposed settlement that may give rise to a claim
by CIBC for indemnification.  The plain terms of the settlement consent clause do not,
however, entitle CIBC to a release from liability for a breach of that clause.  While
CIBC denies that the settlement consent clause operates as a prospective release, the
remedy that CIBC seeks for the alleged breach in the Director Litigation essentially

---

[58]     Engagement Letter, Exh. 1 to CIBC's Motion [Doc. # 13], at 7.

amounts to a prospective release of CIBC from claims.  Under New York law, the

language of such a release must express in unequivocal terms the intention of the

parties to relieve a defendant of liability.  *Lago*, 575 N.E.2d at 99–100.  Here, the

settlement consent clause does not express in unequivocal terms the parties' intention

to grant CIBC a release from liability for a breach of that clause.  Furthermore, the

settlement consent clause does not on its face apply to settlement of claims by or on

behalf of Seven Seas asserted directly against CIBC.  Rather, the clause governs when

a third party asserts a claim for indemnity against CIBC after the third party has

settled with Seven Seas in the absence of notice to and approval by CIBC.[59]

Alternatively, Plaintiff argues that CIBC has waived the right to relief under the

settlement consent clause by failing to object to the settlement in the Director

Litigation before the bankruptcy court.  CIBC responds simply that the bankruptcy

court's finding that the settlement terms were reasonable is "simply irrelevant and has

no bearing on the contractual rights afforded [CIBC]."[60]  CIBC cites no authority in

support of its contention and the Court is unpersuaded.  On July 2, 2008, before the

settlement in the Director Litigation was final, Plaintiff filed a "Motion to

---

[59]     *Id.* ("Seven Seas agrees not to enter into any . . . release or settlement . . . *in respect of which indemnification* may be sought hereunder without the prior written consent of CIBC . . .") (emphasis added).

[60]     CIBC's Reply [Doc. # 23], at 20.

Compromise Claims against Director and Entity Defendants under Bankruptcy Rule 9019."[61]  Notice was given to all parties-in-interest with directions that objections had to be filed within 20 days.  CIBC received notice but did not object to the Motion to Compromise.  On August 8, 2008, the bankruptcy court approved the settlement, finding it to be fair and equitable.[62]

Under New York law, "the defense of waiver requires a 'clear manifestation of an intent by plaintiff to relinquish her known right.'"  *Beth Israel Medical Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (quoting *Courtney-Clarke v. Rizzoli Intern. Publications, Inc.*, 251 A.D.2d 13 (1st Dep't 1998)).  Under Texas law, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."  *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 189 (5th Cir. 2007) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)).  If the settlement consent clause applies to the circumstances asserted by CIBC at all, under both New York and Texas law, CIBC's failure to object to the settlement in the bankruptcy court, knowing it (CIBC) did not approve the settlement or receive a release, constitutes the knowing

---

[61]   Motion to Compromise Claims against Director and Entity Defendants under Bankruptcy Rule 9019, Exh. 5 to CIBC's Motion [Doc. # 5].

[62]   Order Approving Compromise and Settlement Between Plaintiffs and the Director and Entity Defendants, Bankruptcy Case No. 02-45206 [Doc. # 366].

and intelligent waiver of its contractual right to approve the settlement. Finally, if the clause is applicable, its requirements were substantially complied with by virtue of the bankruptcy court's notice and objection procedure. That process afforded CIBC exactly the rights the clause contemplated. Accordingly, the Court denies CIBC's Motion grounded on the settlement consent clause.

### J.  Proximate Cause

CIBC argues that Plaintiff's First Amended Complaint fails to allege facts sufficient to establish that CIBC's Fairness Opinion proximately caused any of the damages alleged. CIBC also argues that a number of superseding causes resulted in the actual injury to Plaintiff, thus relieving CIBC from any potential liability. Plaintiff argues that dismissal on proximate causation grounds is premature. The Court agrees. While the question of proximate cause may be decided as a matter of law when only one conclusion may be drawn from the established facts, *Pironti v. Leary*, 840 N.Y.S.2d 98, 100 (N.Y. App. Div. 2007) (citing *Kerdiarian v. Felix Contracting Corp.*, 414 N.E.2d 666, 670 (N.Y. 1980)), typically "[t]he issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder . . . ," *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840–41 (1996). Taking Plaintiff's allegations as true, the Court is unable to conclude as a matter of law that Plaintiff cannot prove proximate causation. Moreover, it is not the Court's

province to resolve the competing factual allegations necessary to determine the proximate cause issue.  This question requires appropriate time for discovery and presentation of evidence.  CIBC's Motion is denied on this ground.

### K.   **Breach of Fiduciary Duty**

CIBC argues that Plaintiff's Amended Complaint does not allege facts sufficient to establish a fiduciary relationship between CIBC and Seven Seas or Seven Seas' Board of Directors.  Plaintiff argues that a fiduciary relationship existed because CIBC provided complex financial advice to Seven Seas and had an "extremely close and extensive relationship" with Seven Seas.[63]  CIBC contends that financial advisors do not owe fiduciary duties to their clients in the ordinary course of business.  "The existence of a fiduciary relationship, outside of formal relationships that automatically give rise to fiduciary duties, is usually a fact intensive inquiry."  *ARA Automotive Group v. Cent. Garage, Inc.*, 124 F.3d 720, 723 (5th Cir. 1997).  Taking all of Plaintiff's well-pleaded factual allegations in the Amended Complaint as true, Plaintiff has failed to establish the existence of a fiduciary relationship between Plaintiff and CIBC.

Under both New York and Texas law, a fiduciary relationship exists when one person is under a duty to act for or to give advice for the benefit of another upon

---

[63]     Plaintiff's Amended Complaint [Doc. # 5], ¶ 19.

matters within the scope of the relationship.  *See Muller-Paisner v. TIAA*, 289 F.

App'x 461, 465 (2d Cir. 2008) (quoting *Flickinger v. Harold C. Brown & Co., Inc.*,

947 F.2d 595, 599 (2d Cir. 1991)); *ARA Automotive*, 124 F.3d at 723 (quoting *Tex.*

*Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex. 1980)).  Generally, financial

advisors such as investment banks do not stand in a fiduciary relationship with their

clients.  *See, e.g., Ciccone v. Hersh*, 530 F. Supp. 2d 574, 577–78 (S.D.N.Y. 2008);

*In re e2 Commc'ns, Inc.*, 354 B.R. 368, 392–94 (Bankr. N.D. Tex. 2006); *see also*

*Joyce v. Morgan Stanley & Co., Inc.*, 538 F.3d 797, 802 (7th Cir. 2008).

Plaintiff relies primarily on New York law for legal support for this claim.

Under New York law, a fiduciary relationship is necessarily "grounded in a higher

level of trust than normally present in the marketplace between those involved in

arms' length business transactions."  *JPMorgan Chase Bank, N.A. v. IDW Group,*

*LLC*, 2009 WL 321222, at *8–*9 (S.D.N.Y. Feb. 9, 2009) (citing *EBC I, Inc. v.*

*Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005)).  Plaintiff's Amended

Complaint fails to allege facts sufficient to raise a legally viable or plausible claim that

the relationship between Plaintiff and CIBC was grounded in such a higher level of

trust.  There are no allegations in the Amended Complaint that CIBC negotiated on

behalf of Seven Seas. *See and compare Frydman & Co. v. Credit Suisse First Boston*

*Corp.*, 708 N.Y.S.2d 77, 79 (N.Y. App. Div. 2000); *Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 12 (N.Y. App. Div. 1998).

"New York courts [also] have found fiduciary relations between clients and investment banks where there is either a confidence reposed which invests the person trusted with an advantage in treating the person so confiding or an assumption of control and responsibility." *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. 2004) (internal quotations and citations omitted). In *American Tissue*, the court found that the complaint "repeatedly emphasize[d] the extent of [the investment bank's] penetration of [the client's] finances and management, the extraordinary trust it reposed in [the investment bank], and its reliance on [the investment bank's] advice and due diligence in connection with the bond offering and related transactions," and, therefore, the court denied a motion to dismiss because it could not say as a matter of law that no fiduciary duty existed. *Id.* Plaintiff's Amended Complaint, in contrast, does not allege facts sufficient to show that CIBC penetrated Seven Seas' finances and management to a sufficiently substantial degree. Similarly, in *Official Committee of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 2002 WL 362794, at *9–*10 (S.D.N.Y. Mar. 6, 2002), the district court held that a fiduciary relationship can arise within certain investment banking contexts. The facts of *Official Committee*,

however, are materially distinguishable from the case at bar, as currently presented. In *Official Committee*, the financial advisor investment bank was held to have a fiduciary relationship with the client because the investment bank's duties included evaluating the company and its operations, advising the company on a proposed purchase price and form of consideration, assisting the company in structuring the transaction and negotiating the financial aspects of the transaction.  Moreover, the complaint specifically alleged that the investment bank accepted the trust and confidence placed in it by the company as the investment bank was an entity with superior knowledge and was in a superior position to exert unique influence over the company.  Based on the allegations in Plaintiff's Amended Complaint, CIBC's provision of a fairness opinion for the Secured Facility and CIBC's limited scope of work as defined by the engagement letter are significantly less than the functions performed by the investment banking firms in *Official Committee* and *American Tissue.*  Plaintiff's Amended Complaint fails to allege facts that demonstrate that CIBC was integrated into and controlling Seven Seas' affairs or management, or otherwise obtained a superior advantage over the ordinary corporate investment advisor or banker.  Therefore, under New York law, Plaintiff has failed to adequately allege the existence of a fiduciary relationship between Plaintiff and CIBC.

Plaintiff's Amended Complaint also fails to allege sufficient facts to impose a fiduciary duty on CIBC under Texas law.  Under Texas law, fiduciary duties arise as a matter of law in certain formal relationships.  *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex. 1992).  The relationship between Plaintiff and CIBC does not fall into any of the formally recognized categories.  Apart from these formal relationships, fiduciary duties can arise informally.  "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."  *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998).  Plaintiff focuses on its allegations that CIBC was selected "to serve as [Seven Seas'] exclusive financial advisor because CIBC had an extremely close and extensive relationship with [Seven Seas] and its management and was intimately familiar with [Seven Seas'] personnel, operations and capital structure."[64]  However, "[t]he fact that a business relationship has been cordial and of extended duration is not by itself evidence of a confidential relationship."  *Lexington Ins. Co. v. North Am. Interpipe, Inc.*, 2009 WL 1750523, at * 3 (S.D. Tex. 2009) (quoting  *Mauskar v. Hardgrove*, 2003 WL 21403464, at *6 (Tex.App.—Houston [14th Dist.] June 13, 2003, no pet.)).  Plaintiff's complaint does not allege facts to

---

[64]      Plaintiff's Amended Complaint [Doc. # 5], ¶ 19.

establish that a special relationship of trust and confidence existed between Seven Seas and CIBC prior to and apart from the engagement letter that forms the basis of Plaintiff's claims.   Moreover, to the extent Plaintiff argues that the success fee provision of the engagement letter establishes a fiduciary relationship, Texas courts will not create an informal fiduciary relationship simply because the parties' interests were aligned at some point during the relationship.  *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

Taking all allegations in Plaintiff's Amended Complaint as true, Plaintiff has failed allege facts sufficient to establish the existence of a fiduciary relationship between Plaintiff and CIBC under New York or Texas law.  Accordingly, CIBC's Motion is granted with respect to Count II (CIBC's alleged fiduciary duty of loyalty) and Count III (CIBC's alleged fiduciary duties of care and prudence).  The Court nevertheless grants Plaintiff leave to amend to replead these claims if it is able to do so within the strictures of Federal Rule of Civil Procedure 11.

### L.    Fraud and Negligent Misrepresentation Claims

Under New York and Texas law, the elements of a fraud cause of action are: (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the

party was injured as a result.  *See Crigger v. Fahenstock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 563 n.3 (5th Cir. 2002) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998)).

As a threshold matter, CIBC argues that its representations about the fairness of the transaction are not actionable because the representations were statements of opinion, not fact.  However, the parties cite no cases addressing specifically "fairness opinions," as involved here.  In any event, "whether a statement is an actionable statement of 'fact' or merely one of 'opinion' often depends on the circumstances in which a statement is made."  *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 267 (Tex. 1995).  Plaintiff argues that "because of the financial complexities related to CIBC's misleading statements and omissions, [Plaintiff] believes expert testimony will be necessary to make the determination between fact and opinion."[65]  Independent of the need for expert analysis, the Court agrees that a definitive determination of whether the fairness opinion constitutes "opinion" or "fact" is premature and declines at this time to dismiss Plaintiff's fraud claim on this basis.

As discussed in Section II.I.1 above, Plaintiff's negligent misrepresentation claim is barred by the release language in Annex A.  Therefore, the Court confines its

---

[65]     Plaintiff's Surreply [Doc. # 25], at 12–13.

further analysis to Plaintiff's fraud claim.  CIBC primarily argues that Plaintiff has

failed to plead fraud with sufficient particularity to satisfy the requirements of Federal

Rule of Civil Procedure 9(b).[66]  Rule 9(b) requires that "[i]n all averments of fraud or

mistake, the circumstances constituting fraud or mistake shall be stated with

particularity."   FED. R. CIV. P. 9(b); *see Leatherman v. Tarrant Cty. Narcotics

Intelligence Unit*, 507 U.S. 163, 168–69 (1993); *Hart v. Bayer Corp.*, 199 F.3d 239,

247 n.6 (5th Cir. 2000).  In particular, the pleadings should "specify the statements

contended to be fraudulent, identify the speaker, state when and where the statements

were made, and explain why the statements were fraudulent." *Southland Securities

Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997)).  The

purpose of Rule 9(b) is to provide defendants adequate notice of the nature and

grounds of the claim. *See Hart*, 199 F.3d at 247 n.6.  "Put simply, Rule 9(b) requires

the 'who, what, when, where, and how' to be laid out." *Benchmark Elecs.*, 343 F.3d

at 724.  Plaintiff has failed to meet this standard.

---

[66]     As a threshold matter, Plaintiff advances the argument that it is not required to plead
its fraud claims specifically because Plaintiff is suing CIBC for pre-petition acts.
Plaintiff clarifies that a more liberal pleading standard is applied to fraud allegations
in bankruptcy cases, citing *In re Allou Distributors, Inc.*, 387 B.R. 365, 385 (Bankr.
E.D.N.Y. 2008); *Smith ex rel. Estates of Boston Chicken, Inc. v. Arthur Andersen
L.L.P.*, 175 F. Supp. 2d 1180, 1201 (D. Ariz. 2001).  Whether a lenient standard
applies in bankruptcy cases is irrelevant because the case at bar is not a bankruptcy
case.  Plaintiff must meet the standards of Rule 9(b).

Here, Plaintiff's Amended Complaint alleges that in its fairness opinion, CIBC represented that the Secured Facility was "fair" to Seven Seas from a financial point of view when in fact the transaction was not.  This allegation is sufficient to satisfy the who, what, when and where requirements of Rule 9(b).  However, Plaintiff's Amended Complaint fails to allege with sufficient particularity why, *i.e.* "how," CIBC's statements were false or fraudulent.  Plaintiff's allegations do not sufficiently put CIBC on notice of the particular challenged assertions.  The Court rejects Plaintiff's argument that its pleading is sufficient because "the reasons why the $45 million transaction and the drilling of the Deep Well were not fair to the Company from a financial point of view will be the subject of expert testimony."[67]  The fact that expert testimony may be necessary to prove Plaintiff's claim does not relieve Plaintiff of the requirements of Rule 9(b).  Even without expert testimony Plaintiff must be able to articulate at the outset a plausible factual theory of why the statements were allegedly fraudulent.  Moreover, Plaintiff has had plenty of time in this second suit against CIBC to solidify its factual fraud theories.

Accordingly, CIBC's Motion is granted with respect to Plaintiff's fraud claim.  Dismissal of a claim for failure to meet the pleading requirements of Rule 9(b), however, must be accompanied by leave to amend, "unless the defect is simply

---

[67]     Plaintiff's Response [Doc. # 19], at 49.

incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart*, 199 F.3d at 247 n.6 (citing *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 675–76 (2d Cir. 1991)). Because the defect identified in CIBC's Motion does not appear on this record to be incurable and because Plaintiff has not been afforded repeated opportunities to meet the pleading requirements of Rule 9(b), the Court grants Plaintiff leave to amend the Amended Complaint.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court dismisses Plaintiff's claims against CIBC World Markets, Inc., but grants Plaintiff leave to amend, if it is able to do so within the strictures of Rule 11. The Court dismisses Plaintiff's Count IV (negligence) and Count VII (negligent misrepresentation) claims with prejudice. The Court grants CIBC's Motion on Plaintiff's breach of fiduciary duty claims (Counts II and III) and Plaintiff's fraud claim (Count VI), but grants Plaintiff leave to amend within Rule 11 requirements. The Court denies CIBC's Motion on all other grounds. Accordingly, it is hereby

**ORDERED** that CIBC's Motion [Doc. # 13] is **GRANTED IN PART** and **DENIED IN PART**.

SIGNED at Houston, Texas, this <u>25</u><sup>th</sup> day of **August, 2009**.

Nancy F. Atlas
United States District Judge