# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SEVEN SEAS PETROLEUM, INC.** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 4:08-cv-3048** |
| | § | |
| **v.** | § | |
| | § | |
| **CIBC WORLD MARKETS CORP.** | § | |
| | § | **JURY TRIAL REQUESTED** |
| **Defendant.** | § | |

## PLAINTIFF'S RESPONSE TO CIBC WORLD MARKETS CORP.'S
## MOTION FOR STAY OF CASE AFTER COMPLETION OF FACT DISCOVERY

Omar S. Saleh
State Bar No. 00797786
Southern District I.D. No. 22903

The Lanier Law Firm, P.C.
6810 FM 1960 West
Houston, Texas 77069
(713) 659-5200 (Telephone)
(713) 659-2204 (Facsimile)
Email: osaleh65@gmail.com

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF**


**OF COUNSEL:**

W. Mark Lanier, State Bar No. 11934600
George Y. Niño, State Bar No. 00786456
The Lanier Law Firm, P.C.
6810 FM 1960 West
Houston, Texas 77069
Telephone: 713-659-5200
Facsimile: 713-659-2204

# TABLE OF CONTENTS

I.      Introduction and Summary of Argument ................................................................ 1

II.     Overview of Bankruptcy Proceedings and Prior Litigation with CIBC ............................ 3

III.    Argument ........................................................................................................... 6

        A.      The Dismissal Agreement Precludes CIBC from Arguing that the Debtor's Plan
                did not Adequately Preserve Claims Against CIBC ............................................... 6

        B.      The Debtor's Plan Satisfies *MPF Holdings'* "Shermanesque" Standard. ............ 10

        C.      *MPF Holdings* Misapplies Fifth Circuit Precedent and Raises Significant Policy
                Concerns. ..................................................................................................... 13

IV.     Conclusion ....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Levy*,
   283 F.3d 761 (6th Cir. 2002) ...................................................................................8

*Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*,
   279 B.R. 145 (Bankr. D. Del. 2002) ...................................................................8, 14

*Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*,
   540 F.3d 351 (5th Cir. 2008) ............................................................................8, 15

*Eubanks v. F.D.I.C.*,
   977 F.2d 166 (5th Cir. 1992) ...................................................................................8

*Harstad v. First Am. Bank*,
   39 F.3d 898 (8th Cir. 1994) .....................................................................................8

*In re Bankvest Capital Corp.*,
   375 F.3d 51 (1st Cir. 2004) ......................................................................................8

*In re Bleu Room Experience, Inc.*,
   304 B.R. 309 (Bankr. E.D. Mich. 2004) ..................................................................8

*In re Bridgeport Holdings, Inc.*,
   326 B.R. 312 (Bankr. D. Del. 2005) ........................................................................8

*In re Davaton, Inc.*,
   303 B.R. 119 (Bankr. N.D. Tex. 2003) ....................................................................8

*In re I. Appel Corp.*,
   300 B.R. 564 (S.D.N.Y. 2003) .................................................................................8

*In re Ice Cream Liquidation, Inc.*,
   319 B.R. 324 (Bankr. D. Conn. 2005) ......................................................................8

*In re Meyrowitz*,
   2010 WL 5292066 (Bankr. N.D. Tex. Dec. 20, 2010) ............................................8

*In re MPF Holdings U.S. LLC*,
   443 B.R. 736 (Bankr. S.D. Tex. 2011) ........................................................ passim

*In re Pen Holdings, Inc.*,
   316 B.R. 495 (Bankr. M.D. Tenn. 2004) .................................................................8

*In re Reg'l Diagnostics, LLC*,
   372 B.R. 3 (Bankr. N.D. Ohio 2007) .......................................................................8

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
    487 F.Supp.2d 914 (S.D. Ohio 2007) ....................................................................8

*In re Stratford of Texas, Inc.*,
    635 F.2d 365 (5th Cir. 1981) ...............................................................................15

*JP Morgan Trust Co., NA v. Mid-America Pipeline Co.*,
    413 F.Supp.2d 1244 (D. Kan. 2006) ......................................................................8

*Kelley v. South Bay Bank (In re Kelley)*,
    199 B.R. 698 (9th Cir. 1996) .................................................................................8

*Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*,
    310 B.R. 107 (Bankr. N.D. Ill. 2004) ....................................................................8

*Mickey's Enters., Inc. v. Saturday Sales, Inc.*,
    165 B.R. 188 (Bankr. W.D. Tex. 1994) .................................................................8

*P.A. Bergner & Co. v. Bank One, Milwaukee, N.A.*,
    140 F.3d 1111 (7th Cir. 1998), *cert. denied*, 525 U.S. 964 (1998)..........................8

*Phoenix Petroleum Co. v. United States*,
    215 F.3d 1345, 1999 WL 521189 (Fed. Cir. July 23, 1999).................................7, 8

*Rosenshein v. Kleban*,
    918 F.Supp 98 (S.D.N.Y. 1996)............................................................................8

*Spicer v. Laguna Madre Oil & Gas II, LLC (In re Tex. Wyo. Drilling, Inc.)*,
    422 B.R. 612 (Bankr. N.D. Tex. 2010)..............................................................8, 17

*Watkins v. Petro-Search, Inc.*,
    689 F.2d 537 (5th Cir. 1982) ................................................................................9

## OTHER AUTHORITIES

Robert C. Folland & Andrew L. Tursack, Jr., *Preserving Estate Claims Post-Confirmation: A Need for Uniformity from the Circuit Courts* ...............................8

FED. R. CIV. P. 11....................................................................................................16

FED. R. CIV. P. 15....................................................................................................16

Seven Seas Petroleum, Inc. ("Plaintiff," "Seven Seas," the "Company," or the "Debtor") files this Response to CIBC World Markets Corp.'s Motion for Stay of Case After Completion of Fact Discovery ("Motion for Stay" or "Motion") and respectfully states:[1]

## I. Introduction and Summary of Argument

CIBC has filed a Motion for Stay requesting that the Court stay all proceedings at the conclusion of fact discovery. CIBC contends that such extraordinary relief is justified because the bankruptcy court in *In re MPF Holdings* has issued an opinion that interprets the requirements for a reorganized debtor to pursue post-bankruptcy litigation claims differently than this Court, and because the bankruptcy court in *MPF Holdings* has certified its opinion for an immediate appeal to the Fifth Circuit Court of Appeals. CIBC further contends that a stay is warranted for reasons of judicial economy. CIBC argues that if the Fifth Circuit adopts the bankruptcy court's holding in *MPF Holdings* (which CIBC contends is likely), this Court will be required to dismiss Plaintiff's claims in this case.

As will be discussed in greater detail below, CIBC's assertions are factually and legally incorrect. CIBC was originally sued by the Debtor's bankruptcy estate in the Directors Litigation, and then entered into a dismissal agreement with the estate expressly prohibiting CIBC from arguing that the Debtor's Chapter 11 Plan did not adequately preserve claims against CIBC in the event that the estate (or its successor) ever sued CIBC again in the future. This prohibition applied whether CIBC was re-joined in the Directors Litigation or was sued in a future proceeding like this one. Thus, CIBC is

---

[1]     CIBC World Markets Corp. shall be referred to herein as "CIBC" or "Defendant."

precluded by contract from arguing that the Debtor's Plan did not adequately preserve claims against CIBC, and the Fifth Circuit's future holding in *MFP Holdings* (whatever it may be) is of no consequence to this proceeding.

Assuming for the sake of argument that the parties' dismissal agreement failed to preclude CIBC from arguing that the Debtor's Plan did not adequately preserve claims against CIBC **and** that the Fifth Circuit eventually does adopt the bankruptcy court's holding in *MPF Holdings*, a stay of the proceedings and a dismissal of the Plaintiff's claims would still not be warranted because the Debtor's bankruptcy Plan satisfies the *"Shermanesque"* standard adopted by the court in *MPF Holdings*. In fact, the Debtor's Plan not only reflects the Debtor's intent to preserve claims against CIBC, it actually required the Debtor's bankruptcy trustee ("Trustee") to sue CIBC before the Plan's Effective Date. Complying with the requirements of the Plan, the Trustee sued CIBC **during** the Debtor's bankruptcy case, alleging essentially the same claims that have been asserted in this lawsuit. Accordingly, the holding in *MPF Holdings* does not absolve CIBC from liability in this case. Indeed, there cannot be a more demonstrative way to reflect a Debtor's intent to preserve claims against a particular defendant than to actually bring them.

Finally, the rationale espoused by the court in *MPF Holdings* is simply not a proper application of Fifth Circuit precedent and presents several wide-ranging policy concerns. In particular, the Fifth Circuit has never held that in order to preserve a debtor's ability to assert litigation claims after it emerges from bankruptcy, a debtor's Chapter 11 plan must indicate that the reorganized debtor "will sue" or "intends to sue" a particular creditor or party. Instead, it is the intent to "***preserve***" claims (not the intent to

"*assert*" them) that must be reflected "specifically and unequivocally" in a debtor's Chapter 11 plan.  As the Court has previously ruled, a careful reading of the Debtor's Plan and Disclosure Statement indicates the bankruptcy estate's intent to preserve claims against CIBC.  Indeed, the estate sued CIBC during the Debtor's bankruptcy case.  Accordingly, CIBC's request to stay the proceedings should be denied.

## II.  Overview of Bankruptcy Proceedings and Prior Litigation with CIBC

Before addressing the procedural and substantive reasons for denying CIBC's Motion for Stay, Plaintiff believes that a brief overview of the Debtor's bankruptcy case and the estate's previous litigation against CIBC will be helpful to the Court.  The Debtor's bankruptcy case initially arose in response to an involuntary bankruptcy petition filed on December 20, 2002 by a group of the Debtor's unsecured bond holders seeking to halt the sale of the Debtor's income-producing assets and to halt foreclosure proceedings that had already commenced against Seven Seas.  Shortly thereafter, Seven Seas filed its own voluntary bankruptcy petition, which resulted in Ben Floyd being appointed Chapter 11 Trustee (the "Trustee") on January 14, 2003.

On March 31, 2003, the Trustee instituted a lawsuit against a group of defendants for their role in the Debtor's $45 million secured financing transaction (the "Transaction").  The lawsuit was commenced several months *before* the Effective Date of the Debtor's Chapter 11 Plan.  Among the defendants sued by the estate were CIBC World Markets, Corp. and CIBC World Markets, Inc.  A copy of the March 31, 2003 lawsuit is attached as **Exhibit 1**.  The lawsuit reflected in **Exhibit 1** is referred to in the Debtor's Disclosure Statement and Plan as the "Chesapeake Adversary Proceeding."  In this litigation, the Parties have referred to the "Chesapeake Adversary Proceeding" as the

"Directors Litigation." In this pleading, the Chesapeake Adversary Proceeding will also be referred to as the "Directors Litigation."

On August 13, 2003, the estate amended its complaint in the Directors Litigation and added claims against certain of the Debtor's former officers and directors ("Directors"). The Amended Complaint in the Directors Litigation also included essentially the same claims against CIBC that are pending today. (*See* Amended Complaint in the Directors Litigation, attached as **Exhibit 2**.)

Shortly after being sued, CIBC contacted the estate's litigation attorneys and represented to them that CIBC was innocent of any wrongdoing. CIBC specifically represented that it was "duped" by the Directors into issuing the fairness opinion for the Transaction and, given the opportunity, CIBC would demonstrate that it played no role in the Directors' breaches of fiduciary duties. CIBC further indicated that it intended to cooperate with the estate in the estate's pursuit of litigation claims against the Directors.

Taking CIBC at its word, the estate entered into negotiations with CIBC that would allow the estate to dismiss CIBC from the Directors Litigation, but at the same time would preserve the estate's ability to sue CIBC in the future if the facts proved contrary to CIBC's representations. The negotiations between the estate and CIBC eventually culminated in the parties entering into a dismissal agreement on September 17, 2003 (the "Dismissal Agreement"). (*See* Dismissal Agreement, attached as **Exhibit 3**.) Under the terms of the Dismissal Agreement, CIBC would be dismissed from the Directors Litigation ***without prejudice*** in exchange for CIBC's agreement to: (i) produce certain discovery to the Trustee, (ii) toll the applicable statute of limitations for a period of one year, and (iii) CIBC's agreement not to assert a defense based on ***res judicata***,

*judicial estoppel*, claim preclusion or issue preclusion if CIBC was later re-joined in the Directors Litigation or sued again in a subsequent lawsuit like this one. (*See id.* at p. 1.)[2]

At the time CIBC and the estate were negotiating CIBC's dismissal from the Directors Litigation, the Debtor's confirmation process was already well under way. The bankruptcy court approved the Debtor's Disclosure Statement on June 26, 2003, and eventually confirmed the Debtor's Plan on August 4, 2003. The Plan became effective on August 14, 2003.

Both the Debtor's Plan and Disclosure Statement reflected the Debtor's intent to preserve the ability to pursue the litigation claims commenced against CIBC during the bankruptcy case after the Debtor emerged from bankruptcy. In particular, the Debtor's Disclosure Statement provided that the estate was investigating potential common law claims against CIBC for CIBC's role in the Transaction. (*See* Debtor's Disclosure Statement, attached as **Exhibit 4**, at pp. 40-41.) More significantly, however, the Debtor's Plan **required** the reorganized Seven Seas to sue CIBC in the Directors Litigation after the Debtor emerged from bankruptcy because CIBC was a named defendant in the Directors Litigation prior to the Effective Date of the Plan. (*See* Debtor's Plan, attached as **Exhibit 5**, at § 8.2(k), p. 20.) In fact, the live complaint in the Directors Litigation was incorporated into the Debtor's Plan itself. *Id.*

The Debtor's Plan also indicated that any litigation claims pending against any defendant in the Directors Litigation before the August 14, 2003 Effective Date would be

---

[2]    The Parties' thereafter extended the terms of the Dismissal Agreement on several occasions prior to the commencement of this lawsuit.

preserved for the Reorganized Debtor. (*Id.*)[3] Thus, CIBC had been sued during the Debtor's bankruptcy case and the Debtor's Plan specifically and unequivocally preserved the Reorganized Debtor's right to pursue virtually the identical claims that have been asserted against CIBC in this lawsuit. Pursuant to the terms of the Dismissal Agreement, CIBC was eventually dismissed from the Directors Litigation without prejudice on September 18, 2003. (*See* Trustee's Notice of Dismissal, attached as **Exhibit 6**.)

### III. Argument

**A. The Dismissal Agreement Precludes CIBC from Arguing that the Debtor's Plan did not Adequately Preserve Claims against CIBC.**

The linchpin of CIBC's request for a stay of the proceedings -- that the Debtor's Plan did not adequately preserve claims against CIBC -- is simply foreclosed by the Dismissal Agreement. While the Dismissal Agreement did not specifically preclude CIBC from asserting a ***standing*** defense for the Debtor's purported failure to adequately preserve claims against CIBC in the Debtor's Chapter 11 Plan, it did specifically prohibit CIBC from asserting a ***res judicata*** defense based on the same premise, if CIBC was ever re-joined in the Directors Litigation or sued by the Debtor in a subsequent lawsuit like this one:

> In consideration for this dismissal [without prejudice], CIBC agrees to . . . ***not*** **assert a defense based on res judicata, collateral estoppel,** *claim* *preclusion and issue preclusion if CIBC is later sued or re-joined in this* *proceeding* [the Directors Litigation] **or joined in a subsequent** *proceeding* [this lawsuit].

(Dismissal Agreement at p. 1.) (emphasis added)

---

[3]        (*See also* Debtor's Plan at § 8.2(k)(1)(C), p. 21.) ("Nothing contained in this Mutual Release shall be deemed to release . . . CIBC World Markets and/or any CIBC entities named as Defendants in the Chesapeake Adversary prior to the Effective Date, for any pre-petition acts or omissions.").

This language clearly demonstrates Debtor's intent to prohibit CIBC from arguing that the Debtor's Plan did not adequately preserve the pending claims against CIBC, regardless of whether such defense is asserted on the basis of *res judicata* or couched as a standing defense. Indeed, courts have consistently referred to both defenses (*res judicata* and standing) ***interchangeably*** when determining whether to dismiss claims because they were not adequately preserved in a debtor's Chapter 11 plan:

> To emerge from bankruptcy under a plan of reorganization, a Chapter 11 debtor must file a schedule apprising all creditors of all the debtor's assets so that the creditors can vote intelligibly on the merits of the plan that disposes of the scheduled assets. These assets include potential adversary proceedings. Numerous cases in various jurisdictions deal with the situation such as the one here, where following the close of bankruptcy, a debtor asserts a claim that it could have, but did not, list on its schedule of assets. But no uniform rule emerges on how this situation should be analyzed. Courts generally have recognized what is at stake in these circumstances. If the debtor is permitted to pursue, post-bankruptcy, claims that it could have but did not disclose to the creditors who approved a plan of reorganization, the debtor can keep to himself the proceeds of the claim that otherwise would have been shared with creditors in the bankruptcy proceedings. Opportunity for such a windfall to the debtor could lead to less than full disclosure of assets during bankruptcy proceedings. Denying standing to the debtor to pursue such a claim, however, results in a windfall to the claim defendant, who escapes liability for want of a plaintiff. In those instances, the debtor and his bankruptcy creditors both suffer to the luxury of the lucky claim defendant.
>
> ***Some courts predicate their holdings on grounds of standing, while others prefer the route of estoppel, with different forums expressing different views on the requisite doctrinal elements. Some courts have also relied on res judicata.*** Confusion can ensue when courts rely on Chapter 7 case law in Chapter 11 contexts, or when rationales based on the prior Bankruptcy Act are imputed to interpretations of the current Bankruptcy Code.

*Phoenix Petroleum Co. v. United States*, 215 F.3d 1345, 1999 WL 521189, at \*4 (Fed. Cir. July 23, 1999) (citations omitted, emphasis added).

Applying the same rationale as the court in *Phoenix Petroleum*, courts in the Fifth

Circuit and beyond have similarly dismissed claims under both standing and *res judicata*

when a debtor's Chapter 11 plan failed to adequately preserve litigation claims for pursuit

after bankruptcy. *See In re MPF Holdings U.S. LLC*, 443 B.R. 736, 741 (Bankr. S.D.

Tex. 2011) (comparing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United

Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) (standing dismissal) to *Brown v.

Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (*res judicata* dismissal).[4]

The Debtor's clear intent to prohibit CIBC from asserting all defenses based on

the failure to adequately preserve claims under the Debtor's Chapter 11 Plan is further

evidenced by the fact that the Dismissal Agreement precludes CIBC from asserting a *res

judicata* defense against Seven Seas if CIBC was later re-joined in the Directors

Litigation. Indeed, if CIBC were re-joined in the Directors Litigation rather than being

---

[4]         *See also In re Bankvest Capital Corp.*, 375 F.3d 51, 58-60 (1st Cir. 2004) (res judicata); *Browning v. Levy*, 283 F.3d 761, 774-75 (6th Cir. 2002) (res judicata); *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A.*, 140 F.3d 1111, 1117 (7th Cir. 1998), *cert. denied*, 525 U.S. 964 (1998) (res judicata); *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698, 702-04 (9th Cir. 1996) (res judicata); *Harstad v. First Am. Bank*, 39 F.3d 898, 901-02 (8th Cir. 1994) (standing); *Eubanks v. F.D.I.C.*, 977 F.2d 166, 173 (5th Cir. 1992) (res judicata); *In re Meyrowitz*, 2010 WL 5292066, *11-14 (Bankr. N.D. Tex. Dec. 20, 2010) (res judicata); *Spicer v. Laguna Madre Oil & Gas II, LLC (In re Tex. Wyo. Drilling, Inc.)*, 422 B.R. 612, 623-24 (Bankr. N.D. Tex. 2010) (noting that courts have used the doctrines of standing, res judicata and judicial estoppel to prevent pursuit of claims post-confirmation by a successor to a bankruptcy debtor, and the concerns in applying each doctrine are the same); *In re Reg'l Diagnostics, LLC*, 372 B.R. 3, 14-15, 25-27 (Bankr. N.D. Ohio 2007) (res judicata); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 487 F.Supp.2d 914, 924-25 (S.D. Ohio 2007) (res judicata); *JP Morgan Trust Co., NA v. Mid-America Pipeline Co.*, 413 F.Supp.2d 1244, 1277-1280 (D. Kan. 2006) (res judicata); *In re Pen Holdings, Inc.*, 316 B.R. 495, 498-504 (Bankr. M.D. Tenn. 2004) (res judicata); *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 120-24 (Bankr. N.D. Ill. 2004) (res judicata); *In re Bridgeport Holdings, Inc.*, 326 B.R. 312, 317, 327 (Bankr. D. Del. 2005) (res judicata); *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324, 337-38 (Bankr. D. Conn. 2005) (standing); *In re Bleu Room Experience, Inc.*, 304 B.R. 309, 313-14 (Bankr. E.D. Mich. 2004) (res judicata); *In re I. Appel Corp.*, 300 B.R. 564, 567-70 (S.D.N.Y. 2003) (res judicata); *In re Davaton, Inc.*, 303 B.R. 119, 123-24 (Bankr. N.D. Tex. 2003) (res judicata); *Accord Cohen v. TIC Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 161 (Bankr. D. Del. 2002) (res judicata); *Rosenshein v. Kleban*, 918 F.Supp 98, 103 (S.D.N.Y. 1996) (standing); *Mickey's Enters., Inc. v. Saturday Sales, Inc.*, 165 B.R. 188, 192-93 (Bankr. W.D. Tex. 1994) (res judicata); Robert C. Folland & Andrew L. Tursack, Jr., *Preserving Estate Claims Post-Confirmation: A Need for Uniformity from the Circuit Courts*, 27-MAR AM. BANKR. INST. J. 14 (2008) (res judicata).

sued in a subsequent proceeding, a *res judicata* defense based on any theory but the failure to adequately preserve claims under the plan would not even have been available to CIBC because a traditional *res judicata* can only be asserted in a second lawsuit or **subsequent** proceeding (not the same proceeding in which CIBC was dismissed without prejudice).

Finally, it is black letter law that a court may consider matters outside the four corners of an agreement to determine the parties' intent when entering into the agreement itself. *Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982). Here, the facts and circumstances surrounding CIBC's dismissal clearly demonstrate that Seven Seas intended to preclude CIBC from arguing that the Debtor's Plan did not adequately preserve claims against CIBC, regardless of whether such a defense was asserted in the form of *res judicata* or standing. First and foremost, CIBC's dismissal was **without prejudice**. This clearly demonstrates an intent to prevent CIBC's dismissal in the Directors Litigation from being used in an offensive manner if CIBC was ever rejoined in the Directors Litigation or sued in a subsequent lawsuit like this one.

More significantly, however, the fact that Seven Seas required CIBC to enter into a dismissal agreement before dismissing CIBC from the Directors Litigation itself demonstrates the Debtor's intent to prohibit CIBC from using that dismissal in an offensive manner, or from later arguing that the Debtor's Plan did not adequately preserve claims against CIBC (regardless of whether such a defense were asserted in the form of *res judicata* or couched as a standing defense). In particular, CIBC was dismissed without prejudice from the Directors Litigation at a time when CIBC unquestionably could not have asserted a *res judicata* or standing defense because the

Directors Litigation was commenced **during** the Debtor's bankruptcy case **by** the Trustee, the only person that could assert such claims on behalf of the estate at that time. Surely, the Debtor would have not dismissed CIBC from the Directors Litigation if by doing so it would have given CIBC the ability to assert a defense at a later date which did not exist at the time of CIBC's dismissal. Indeed, by requiring CIBC to enter into a dismissal agreement, the Debtor intended to foreclose that very occurrence.

In sum, because CIBC is precluded by the Dismissal Agreement from arguing that the Debtor's Chapter 11 Plan did not adequately preserve claims against CIBC, Defendant's Motion for Stay is foreclosed as a matter of law, and the Fifth Circuit's future ruling in *MPF Holdings* is of no consequence to this lawsuit, regardless of what that holding may be.

**B.    The Debtor's Plan Satisfies *MPF Holdings'* "Shermanesque" Standard.**

Assuming for the sake of argument that the Dismissal Agreement fails to preclude CIBC from arguing that the Debtor's Plan did not adequately preserve claims against CIBC **and** the Fifth Circuit eventually does adopt the bankruptcy court's holding in *MPF Holdings*, a stay of the proceedings and a dismissal of the Plaintiff's claims would still not be warranted because the Debtor has met the "Shermanesque" standard articulated by the court in *MPF Holdings*. The standard **purportedly** articulates the Fifth Circuit's requirements for a debtor to "specifically and unequivocally" preserve the right to pursue claims under Chapter 11 plans:

> [T]he phrase "specific and unequivocal" in the *United Operating* context means that a proper reservation provision in any plan must expressly state: (1) the name of the putative defendant; (2) the basis on which the putative defendant will be sued; and (3) that the suit will definitely be filed following confirmation. Stated differently, the language must be so ***Shermanesque*** that anyone who reads the proposed plan knows that if the

plan is confirmed, the putative defendant will unquestionably be sued post-confirmation under a particular legal theory or statute.

*In re MPF Holdings*, 443 B.R. at 747 (emphasis added).

Here, the Debtor's Plan and Disclosure Statement clearly satisfy the Shermanesque standard. As reflected in greater detail in the Plaintiff's Response to Defendants' Supplemental Brief in Support of Motion to Dismiss ("Plaintiff's Supplemental Brief Response" [Docket No. 27], attached as **Exhibit 7**, at pp. 19-20), the Debtor's Disclosure Statement alerted CIBC that the Debtor was investigating claims against CIBC and indicated the types of claims (state common law clams arising from the Transaction) that could be asserted against CIBC in the future:

> Under the Bankruptcy Code ***and various state laws***, the Debtor may recover based on claims for breach of fiduciary duty, alter ego, single business enterprise, self-dealing, usurpation of corporate opportunity, denuding, and similar claims under *In re: S. I. Acquisition*, 817 F.2d 1142 (5th Cir. 1987) and related authorities. ***Possible S. I. Acquisition <u>type claims</u> and other claims are described below***.
>
> \* \* \* \*
>
> Prior to the Petition Date, CIBC was retained by the Debtor to assist it in obtaining financing to develop the Guaduas fields and to provide it with certain other financial advice and professional services. ***The Trustee is currently investigating and may bring certain causes of action against CIBC, its affiliated entities, and/or subsidiary corporations***.

(**Exhibit 4**, at pp. 40-41.) (emphasis added)

The Plan then goes on to ***require*** the Debtor to pursue claims against CIBC World Markets Corp. and CIBC World Markets, Inc. after confirmation if they are named as defendants in the Chesapeake Adversary/Directors Litigation ***before*** the Effective Date of the Debtor's Plan:

> k. <u>Dismissal of Chesapeake Adversary **[Directors Litigation]**</u>: Upon the Effective Date, the Collateral Agent, the Secured Creditors, the Secured Indenture Trustee and the Secured Lenders shall be deemed dismissed, with prejudice, from the ***Chesapeake Adversary [Directors Litigation]***

and the Trustee and the Collateral Agent shall take all action necessary to evidence such dismissal; ***provided, however, and only to the extent they are actually named as Defendants in the Chesapeake Adversary [Directors Litigation] prior to the Effective Date***, Robert Hefner, Larry R. Ray, Ronald Lefaive, Randolph Devening, Brian E. Egolf, Robert Panero, Gary Fuller, James R. Schlesinger, Brian Sanchez, Ramiilaj, A Limited Partnership and ***<u>CIBC World Markets and/or any other CIBC entity named as a Defendant</u> shall not be dismissed from the Chesapeake Adversary [Directors Litigation] and the rights of the Trustee, the Debtor, and the Reorganized Debtor to <u>bring claims</u> against these individuals and entities who are not being dismissed <u>shall be preserved</u>***.

(**Exhibit 5**, at § 8.2(k), pp. 40-41.)

Finally, in the ultimate Shermanesque statement, the Debtor actually sued CIBC World Markets Corp. and CIBC World Markets Inc. ***during*** the Debtor's bankruptcy case, even amending its Original Complaint ***before*** the Effective Date of the Debtor's Plan to sue CIBC under essentially the same theories that have been asserted in this lawsuit. (*See* **Exhibit 2** at pp. 2 & 11.) (The Debtor was required to do so because both CIBC entities were named defendants in the Directors Litigation before the Effective Date of the Plan). Thus, the Debtor's Plan and Disclosure Statement unequivocally reserved specific claims/causes of action against the specific CIBC entities in question and actually sued these entities during the Debtor's bankruptcy case.

Here, Plaintiff's actual pursuit of claims against CIBC during the bankruptcy case (rather than merely preserving claims or indicating its intent to pursue claims) is more aptly characterized as "*MacArthuresque*" than Shermanesque.[5] Plaintiff simply is not aware of any court in any jurisdiction that has dismissed claims against a debtor on the basis of *res judicata* or standing based on these facts. Indeed, there cannot be a more

---

[5] MacArthuresque refers to American General Douglas MacArthur who stated, after being driven from the Philippines by the Japanese Military: "I shall return." MacArthur made good on his promise, not only driving the Japanese from the Philippines, but accepting the unconditional surrender of the Empire of Japan aboard the U.S.S. Missouri on September 2, 1945.

demonstrative way to reflect a debtor's intent to preserve claims against a particular defendant than to actually bring them. For this reason alone, CIBC's Motion for Stay should be denied.

**C.**     ***MPF Holdings* Misapplies Fifth Circuit Precedent and Raises Significant Policy Concerns.**

Assuming for the sake of argument that the Dismissal Agreement did not preclude CIBC from seeking a stay based on the terms of the Debtor's Plan and that the Debtor's Plan and Disclosure Statement do not satisfy the Shermanesque standard adopted by *MPF Holdings*, CIBC is still not entitled to a stay of the proceedings for at least five *independent* reasons.

*First and foremost*, *MPF Holdings* incorrectly applies Fifth Circuit precedent. Contrary to the holding in *MPF Holdings*, the "specific and unequivocal" standard adopted by the Fifth Circuit does not require a debtor to state in its Chapter 11 plan that ***"it will sue"*** a specific defendant under a precise legal theory after confirmation of the Debtor's plan. As reflected in greater detail in Plaintiff's Supplemental Brief Response, a debtor is not required to preserve specific causes of action against specific defendants in order to preserve the ability to sue those defendants after confirmation. (*See* **Exhibit 7** at pp. 12-17.) If that were the case, every Chapter 11 plan would be unnecessarily voluminous and take years to confirm:

> [T]he confirmation process is expedited by allowing debtors to include a general reservation of their right to pursue certain causes of action at a later date . . . in large chapter 11 cases, the investigation and litigation of all possible avoidance actions to final judgment can take years. To force the debtor to remain in bankruptcy until a final determination of all possible preference actions is made would act as a detriment to both the debtor and its creditors by slowing down the reorganization process. In most of the large chapter 11 cases in this court, the plan of reorganization and/or liquidation is often confirmed before the debtor and/or a trustee has undertaken a detailed investigation of the potential preference actions. . . .

> More often than not, it is appropriate to delay that undertaking until after plan confirmation.

*In re Ampace*, 279 B.R. 145, 159 (Bankr. D. Del. 2002).

Indeed, underlying the Bankruptcy Code is a policy of moving companies through the reorganization process quickly and efficiently so that they can emerge from bankruptcy as rehabilitated entities that are better able to compete in the market place and better able to create jobs for the society at large. This goal is at odds with *MPF Holdings*, which would require so much detail in a plan of reorganization that a debtor's emergence from bankruptcy in a complex Chapter 11 case would be delayed for a significant period and result in the incurrence of significant additional administrative costs for already depleted estates. *See id.* at 158-59. The *MPF Holdings* decision is also at odds with Congress' 2005 amendments to the Bankruptcy Code limiting the length of a debtor's exclusivity period and making it much harder to extend the period during a debtor's bankruptcy case.

Rather than reserve specific causes of action against every potential defendant that a debtor may sue after bankruptcy, the debtor need only include the following information in its plan or disclosure statement: (i) the particular defendant that may be sued after confirmation; (ii) the fact that the estate is considering suing the identified defendant; (iii) the specific time period for which the debtor is seeking to reserve its right to pursue claims against ***any*** potential defendant (*i.e.*, for acts committed pre-petition or for wrongs committed during the debtor's bankruptcy case); and (iv) the types of claims the debtor wishes to preserve the ability to pursue after the debtor's bankruptcy case (*i.e.*, common law claims, preference actions or other statutory claims arising under the Bankruptcy Code). (*See* **Exhibit 7** at pp. 12-17.) Indeed, it is the intent to "***preserve***"

claims (not the intent to "**assert**" them) that must be reflected "specifically and unequivocally" in a debtor's Chapter 11 plan. *See In re United Operating, LLC*, 540 F.3d at 355.

*Second*, forcing debtors to comply with the Shermanesque requirements in *MPF Holdings* likely will expose reorganized debtors and litigation trustees to potential malpractice and breach of contract liability. In order to forestall malpractice claims, the debtor's counsel will likely state in the debtor's Chapter 11 plan that the debtor intends to sue as many defendants as possible and under as many theories as possible. This is the safest course because if the debtor or its creditors learn of a potentially lucrative claim through discovery that was not thought to be viable at the time the debtor's plan was confirmed, certain creditors will undoubtedly sue the debtor's counsel for failing to preserve the claim under the Shermanesque standard (the creditors will likely argue that the debtor's counsel should have known the claim was viable all along). If, however, the debtor's counsel later learns through discovery (or some other means) that a preserved claim once thought to be lucrative is no longer viable, the debtor will still be required to pursue the claim in question. Otherwise, the debtor could be sued for breach of contract. *See In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981) (stating that a confirmed plan is a binding contract between a debtor and its creditors). Indeed, it is likely that aggrieved creditors seeking to enhance their recovery through litigation claims will use all available means to force a reorganized debtor or litigation trustee to assert as many litigation claims as possible. It's all upside for those creditors.

*Third,* a literal application of the Shermanesque standard would essentially render certain of the Federal Rules of Civil Procedure inapplicable to reorganized debtors or

litigation trustees seeking to assert post-confirmation claims. For example, a reorganized debtor seeking to amend its complaint based on newly obtained evidence in discovery would not be allowed to amend its complaint under the liberal pleading standard of Rule 15, no matter how undiscoverable the evidence was at the time the debtor's Chapter 11 plan was confirmed. Instead, the debtor will be limited to the claims the debtor said it would assert under the debtor's Chapter 11 plan.

Notwithstanding the inapplicability of certain key Federal Rules of Civil Procedure, reorganized debtors and litigation trustees would still undoubtedly be subject to potential sanctions under Rule 11. In that regard, if a reorganized debtor or litigation trustee concludes after the debtor's bankruptcy case that a particular claim is not supportable and nevertheless asserts the claim (for fear of the contractual or malpractice liability discussed above), the reorganized debtor or litigation trustee could then be subject to Rule 11 sanctions.

*Fourth*, the adoption of the Shermanesque standard in *MPF Holdings* has practical limitations and would likely create an administrative logjam for bankruptcy courts and district courts in the Fifth Circuit. Since the filing of CIBC's Motion for Stay, Plaintiff has made a diligent effort to locate Chapter 11 plans containing reservation language indicating that a reorganized debtor or litigation trustee "will sue" a particular defendant for specific claims after plan confirmation (*i.e.*, plans complying with the Shermanesque standard). This search included plans filed in the Fifth Circuit as well as plans filed in other jurisdictions. As of the date of this filing, however, Plaintiff has not been able to locate a single plan satisfying the Shermanesque standard. Indeed, the Debtor's Chapter 11 Plan is unique. Consequently, if the Fifth Circuit adopts the

Shermanesque standard in *MPF Holdings*, this means that every defendant in every post-confirmation lawsuit in the Fifth Circuit will have a viable standing or *res judicata* defense. Such a result would not only frustrate the underlying policies of the Bankruptcy Code, but it would also delay the disposition of non-bankruptcy related lawsuits due to the extensive judicial resources necessary to adjudicate dismissal motions for bankruptcy-related lawsuits.

*Fifth and finally*, because CIBC was not a creditor of the Debtor's bankruptcy estate, it is highly questionable whether CIBC even has the ability to argue that the Debtor's Plan did not adequately preserve claims against CIBC. As detailed in Plaintiff's Supplemental Brief Response, several courts have held that a potential defendant who is not a creditor of a debtor's bankruptcy estate is not entitled to notice that it may be sued after confirmation and is similarly not entitled to argue that the claims eventually asserted against it were not adequately preserved in a Chapter 11 plan. (*See* **Exhibit 7** at pp. 22-23 and cases cited therein.) Moreover, because CIBC is not a creditor and the Debtor's Plan is a liquidating plan, the policy reasons typically justifying the need for additional detail in a Chapter 11 plan are not present here. *See, e.g.*, *Spicer v. Laguna Madre Oil & Gas II, LLC (In re Tex. Wyo. Drilling, Inc.)*, 422 B.R. 612, 623-29 (Bankr. N.D. Tex. 2010).

For example, this is not a situation where CIBC settled its claims on the cheap, was duped into voting for the Plan and then was later sued by the Debtor after emerging from bankruptcy. Indeed, CIBC was not even entitled to vote on the Plan -- only creditors were. Nor is this a situation where a debtor is laying behind the log by not disclosing the details of a potentially lucrative claim in order to keep the claim for itself

rather than sharing the proceeds of the claim with the estate's creditors. Under the

Debtor's liquidating Plan, the creditors are already entitled to all of the proceeds of the

Debtor's litigation claims.

## IV.  Conclusion

Defendant's Motion for Stay should be denied.

**Dated: May 23, 2011**

Respectfully submitted,

The Lanier Law Firm, P.C.

*/s/ Omar S. Saleh*_____
Omar S. Saleh
Texas State Bar No. 00797786
Federal ID No. 22903
6810 FM 1960 West
Houston, Texas 77069
Telephone: 713-659-5200
Facsimile: 713-659-2204
osaleh65@gmail.com

**ATTORNEY-IN-CHARGE FOR
PLAINTIFF**

**OF COUNSEL:**

W. Mark Lanier, Texas State Bar No. 11934600
George Y. Niño, Texas State Bar No. 00786456
The Lanier Law Firm, P.C.
6810 FM 1960 West
Houston, Texas 77069
Telephone:  713-659-5200
Facsimile: 713-659-2204

## CERTIFICATE OF SERVICE

I hereby certify that, on May 23, 2011, a true and correct copy of this Response was served via electronic mail on the following counsel in accordance with the Federal Rules of Civil Procedure.

James Washburn
McKenna Long & Aldridge
3030 Peachtree Street, NE
Suite 5300
Atlanta, Georgia  30308
jwashburn@mckennalong.com

Mark D. Manela
Mayer Brown LLP
700 Louisiana Street
Suite 3400
Houston, Texas 77002-2730
mmanela@mayerbrown.com

*/s/ Omar S. Saleh*
Omar S. Saleh